[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The original plaintiff in this controversy is North Street Elderly Limited Partnership ["North Street"], a partnership which owns a residential housing building for the elderly in Stamford known as Rippowam Manor which was constructed in 1983. In January of 1989, North Street filed an action against Kapetan, Inc. ["Kapetan"] and J. Gullotta Construction Corporation ["Gullotta"], who were the general contractor and the subcontractor retained to furnish work and materials required to apply an exterior synthetic stucco finish to the building. In the four count revised amended complaint, dated February 27, 1989, the plaintiff North Street alleges that the walls of the building failed because the erection and installation were not in accordance with the drawings and specifications in the contract, and that the walls were not constructed in a workmanlike manner. Two counts are directed to Kapetan and the other two counts are against Gullotta.
The general contractor Kapetan filed a third party complaint, dated August 8, 1988 and amended on October 23, 1990, against Matthews Connell, P.C., the architects for the construction project, and STO Industries, the manufacturer and supplier of the synthetic stucco finish applied to the exterior walls. Counts three through five of Kapetan's revised amended third party complaint, dated September 3, 1992, are directed to STO Industries. Count three alleges indemnification based on a breach of warranty; count four alleges indemnification based on a breach of a contract between STO Industries and Gullotta to which CT Page 481 Kapetan was the third party beneficiary; and count five alleges indemnification based upon an active/passive negligence theory.
On August 24, 1988, Gullotta also filed a cross claim against Matthews Connell and STO Industries. Counts two, three, and four of the operative amended complaint, dated February 2, 1993, are directed to STO Industries. All three counts allege indemnification based upon an active/passive negligence theory, a breach of contract, and a breach of warranty.
Kapetan's third party complaint was severed from the North Street action by this court, Cioffi, J., on June 30, 1989 and received its own docket number (CV89-0101815). On January 19, 1993, the undersigned reconsolidated the two actions for trial. Prior to the cases being reconsolidated, STO Industries filed a motion for summary judgment (#114) directed to Kapetan's prior third party complaint.[1] The previous motion for summary judgment was brought on the grounds that the indemnification claim based on active/passive negligence directed to STO Industries was time barred pursuant to the applicable statute of limitations and that such claim failed to allege an independent legal relationship between Kapetan and STO Industries. This court, Sylvester, J., denied the motion in a memorandum of decision dated November 23, 1992. The court found that since the documents which STO Industries submitted were neither certified nor accompanied by an affidavit pursuant to Practice Book 380, they could not be relied upon to determine that there was no genuine issue of material fact. The court further found that Kapetan alleged a sufficient independent legal relationship to state a claim for indemnification.
The motions for summary judgment presently before the court (#204 in the North Street action and #133 in the Kapetan action) were filed by STO Industries on February 11, 1993. Summary judgment motion #133, which is directed to Kapetan's third party complaint dated September 3, 1992, is based on the grounds that STO Industries' express warranty has expired and that the applicable statute of limitations for breach of contract and warranty actions has expired; that there existed no express or implied agreement between STO Industries and Gullotta for the benefit of Kapetan; and that the applicable statute of limitations for a tort indemnification claim has expired and Kapetan has failed to allege the elements necessary for an indemnification claim. Summary judgment motion #204, which is directed to Gullotta, is brought on the same grounds as those CT Page 482 raised in motion #133 with the exception of the ground regarding the existence of a beneficiary relationship, as Gullotta does not mention any such relationship in its operative third party complaint.
In support of both motions for summary judgment, which were heard on the motion or short calendar of November 1, 1993, STO Industries submitted the following: copies of North Street's original and revised complaints; a copy of the original third party complaints and amended versions; STO Industries' memoranda in support of the previous summary judgment motion; Judge Sylvester's memorandum of decision ruling on the prior motion for summary judgment; a copy of STO Industries' express warranty; copies of what appear to be bills from STO to Gullotta; copies of job meeting minutes, dated June 1, 1983 and October 20, 1983; a copy of a distributorship agreement between STO Industries and STO Systems; the certificate of occupancy for Rippowam Manor accompanied by an affidavit attesting to its authenticity; and various portions of deposition testimony.
In support of their opposition, Gullotta and Kapetan both attached copies of two Materials Release documents issued by the United States Department of Housing and Urban Development ["HUD"]. Gullotta also submitted a copy of a letter to counsel from the Director of Manufactured Housing and Regulatory Functions at HUD which explains the Materials Release documents, as well as a copy of the Interim Rule wherein HUD adopted the materials documents.
"[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Wadia Enterprises v. Hirschfeld, 224 Conn. 240, 247, 618 A.2d 506
(1992). A material fact is one that will make a difference in the result of a case. Hammer v. Lumbermen's Mutual Casualty Co.,214 Conn. 573, 578, 573 A.2d 699 (1990). "`The test is whether a party would be entitled to a directed verdict on the same facts.'" Id., quoting State v. Groggin, 208 Conn. 606, 616,546 A.2d 250 (1988).
"[T]he party seeking summary judgment has the burden of showing the nonexistence of any material fact." (Citation omitted; internal quotation marks omitted.) Connecticut Bank 
Trust Co. v. Carriage Lane Associates, 219 Conn. 772, 780-81, CT Page 483595 A.2d 334 (1991). However, if the evidence presented in support of a motion for summary judgement is sufficient, such evidence is "not rebutted by the bald statement that an issue of fact does exist." (Citations omitted; internal quotation marks omitted.) Hammer v. Lumber Casualty Co., supra, 579. In deciding such a motion, the court must view the evidence in the light most favorable to the non moving party. Connecticut Bank Trust Co. v. Carriage Lane Associates, supra.
I. Whether the warranty has expired
In their operative third party complaints, both Kapetan and Gullotta assert indemnification claims based upon a breach of warranty theory. Kapetan alleges in count three of its revised amended third party complaint that if it is liable to the original plaintiff, then "STO Industries is liable to Kapetan Inc. pursuant to STO Industries' warranty of its products, its September 20, 1983 letter to Kapetan." Gullotta alleges in count four of its revised third party complaint that any injuries and damages to the original plaintiff "were the direct and immediate result of STO's breach of its warranty of the STO system."
STO argues that both the express warranty and the statute of limitations for breach of warranty actions have expired. STO Industries claims that its product had an express warranty of five years, which began in 1983, the date of invoice, and expired in 1988.[2] STO Industries further argues that even if the express warranty began on the date the breach was discovered, the warranty expired before the third party plaintiffs made any claim under the warranty. STO notes that the walls began to delaminate on February 9, 1987. However, the warranty claims were not asserted by Kapetan and Gullotta until February 20, 1992 and March 27, 1992, respectively, which is not within five years. Additionally, STO Industries claims that the Uniform Commercial Code ["UCC"] Article Two statute of limitations, General Statutes42a-2-725, which requires an action for a breach of contract involving a sale of goods to be brought within four years after an action accrues, and applies to breach of warranty actions in Connecticut, has expired. Therefore, STO Industries maintains that there is no genuine issue of material fact as to the fourth count of Gullotta's complaint and the third count of Kapetan's complaint.
As noted above, in opposing the motion for summary judgment, Gullotta and Kapetan both attached copies of HUD Materials CT Page 484 Release documents, dated May 20, 1981 and April 8, 1985. Under a section entitled "Manufacturer's Warranty," these documents state that "STO Energy Conservation, Inc. shall warrant the STO [wall finish] System for twenty years against faulty performance." The documents also provide that this warranty "shall include corrections of delamination, chipping, denting, peeling, blistering, flaking, bulging, unsightly discoloration, and other serious deterioration of the system." Gullotta and Kapetan argue that this twenty year warranty operates in lieu of the five year warranty, and at the very least, there is a material issue of fact as to whether the warranty is five or twenty years. Additionally, Gullotta argues that its breach of warranty cause or action assents a product claim and is not governed by the UCC but instead by General Statutes which has a ten year statute of limitations. Kapetan also claims that the UCC statute of limitations does not apply to its third party complaint, since STO sold the goods to Gullotta rather than Kapetan.
In reply to the third party plaintiffs' claims regarding the twenty year warranty, STO Industries filed the affidavit of Buck Buchanan, the vice president of marketing for STO Corporation, which states that while STO Industries takes into consideration the twenty year warranty language in the HUD material release documents, it does not provide such a warranty for its products in each and every construction project where such products are utilized. The affidavit also states that STO Industries did not provide a twenty year warranty on any of its products which were used in connection with the construction of Rippowam Manor.
"A `material fact' has been defined as a fact which will make a difference in the result of the case." United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364, 379, 260 A.2d 596
(1969). Whether the operative express warranty is five or twenty years is a genuine issue of material fact. The materials submitted by both parties does not answer questions regarding HUD's involvement with the project, the effect of the HUD documents, and the relationship between STO Industries and STO Energy Conservation, Inc., the party mentioned in the HUD documents. These questions must be resolved before this court determines the length of STO Industries' express warranty as a matter of law. STO Industries has failed to prove that no genuine issue of material fact exists as to whether its express warranty expired. Accordingly, the motion by STO Industries' motion for summary judgment as to both Gullotta and Kapetan's breach of warranty counts is denied. Since there is a genuine CT Page 485 issue of material fact with regard to the express warranty and summary judgment is not appropriate, it is not necessary at this time to address the issue of whether the UCC statute of limitations or product liability statute of limitations would apply to the third party complaints.
II. Kapetan's Third Party Beneficiary Claim
STO Industries argues that the fourth count of Kapetan's revised amended complaint fails to set forth any genuine issue of material fact because no express or implied in fact contract existed between STO Industries and Gullotta for the benefit of Kapetan. This argument is premised upon STO Industries' claim that STO Systems, an independent distributor managed and controlled by John and Frederick Bunting, was the party who sold the STO product to Gullotta and was the party who had a representative at the construction site. STO Industries maintains that it had no knowledge of Kapetan's identity until the third party action was brought. Furthermore, STO Industries argues that Kapetan has failed to properly allege a cause of action based upon third party beneficiary law in its third party complaint.
"It is axiomatic that the parties to a contract or a contemplated beneficiary thereof may sue to enforce the promises of that contract." Atlas v. Miller, 20 Conn. App. 680, 682,570 A.2d 219 (1990).
 "[T]he ultimate test to be applied [in determining whether a person has a right of action as a third party beneficiary] is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party [beneficiary] and. . .that intent is to be determined from the terms of the contract read in light of the circumstances attending its making, including the motives and purposes of the parties."
(Citations omitted.) Knapp v. New Haven Road Construction Co.,150 Conn. 321, 325, 189 A.2d 386 (1963). The fourth count of Kapetan's revised amended third party complaint alleges that STO Industries breached its contract with Gullotta, that Kapetan was the third party beneficiary of any contracts STO Industries had with Gullotta, and that if Kapetan is liable to the original plaintiff, then STO Industries is liable to Kapetan. Gullotta does not allege that STO Industries intended to assume a direct CT Page 486 obligation to Kapetan. However, "[t]he office of a motion for summary judgment is not to test the legal sufficiency of the complaint, but is to test for the presence of contested factual issues." Burke v. Avitable, 32 Conn. App. 765, 772, 630 A.2d 624
(1993). Whether STO Industries knew that Kapetan was the general contractor on the project and whether it intended Kapetan to be a beneficiary of any contracts which it had with Gullotta are contested factual issues, as is the nature of the relationship between STO Industries and STO Systems. Therefore, genuine issues of material fact exist as to whether Kapetan was a third party beneficiary of the contract between STO Industries and Gullotta, and the motion for summary judgment as to count four of Kapetan's third party complaint is denied.
III. Sufficiency of the Indemnification Claims Based on Active/Passive Negligence
STO Industries argues that the fifth count of Kapetan's complaint and the second count of Gullotta's complaint, which seek indemnification based upon a theory of active/passive negligence, do not adequately allege that STO Industries had exclusive control of the construction site to the exclusion of the third party plaintiffs, which is a necessary element for such claims. STO Industries also argues that Gullotta failed to state an independent legal relationship between Gullotta and STO Industries. These arguments are also premised upon STO Industries' claim that it sold its products to an independent distributor called STO Systems, and that this independent distributor rather than STO Industries sold the products to Gullotta.
"Indemnity involves a claim for reimbursement in full from one who is claimed to be primarily liable." Atkinson v. Berloni,23 Conn. App. 325, 326, 580 A.2d 84 (1990). In order to establish that a party was primarily negligent and therefore liable to indemnify a secondarily negligent party, the following elements must be proven:
 "(1) the party must have been negligent; (2) its negligence rather than another's was the direct and immediate cause of injury; (3) it had exclusive control over the situation; and (4) the negligent party seeking indemnification did not know of the charged party's negligence, had no reason to know anticipate it, and could reasonably have relied on the charged party to act without negligence." CT Page 487
Id., 326-27, quoting Weintraub v. Richard Dahn, Inc., 188 Conn. 570,573, 452 A.2d 117 (1982). "Implicit in indemnification cases is the requirement of an independent legal relationship between the indemnitor and the indemnitee giving rise to a special duty." Id., 327.
"The office of a motion for summary judgment is not to test the legal sufficiency of the complaint, but is to test for the presence of contested factual issues." Burke v. Avitable, supra, 772. Additionally, the legal sufficiency of Kapetan's indemnification claim based on active/passive negligence was already determined in the memorandum of decision addressing STO Industries' previous motion for summary judgment, wherein this court, Sylvester, J., found that "[i]n viewing the third party claim in a broad manner and in favor of Kapetan, an independent legal relationship has been alleged sufficient to state a claim for indemnification." See Kapetan v. STO Industries, 8 CSCR 54
(December 2, 1992, Sylvester, J.). Based on the foregoing, the court denies the motion for summary judgment as to the fifth count of Kapetan's third party complaint and the second count of Gullotta's third party complaint.
III. Whether the statute of limitations for tort indemnification actions has expired
STO Industries argues that the court should grant summary judgment as to Kapetan and Gullotta's indemnification claims based on active/passive because General Statutes 52-577, the applicable statute of limitations for tort indemnification actions, has expired. In response, Kapetan and Gullotta argue that Public Act 93-370, which recently changed the statute of limitations for all indemnification actions based on active/passive negligence, should apply retroactively.
General Statutes 52-577 provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." The Appellate Court has interpreted this three year statute of limitations as applying to indemnification actions brought pursuant to General Statutes52-102a when the underlying cause of action is in tort. Protter v. Brown Thompson Co., 25 Conn. App. 360, 363, 593 A.2d 524, cert. granted in part, 220 Conn. 910, 597 A.2d 524 (1991); see also Morrison v. Zenobia, 1 Conn. App. 7, 8, 467 A.2d 682 (1983). CT Page 488
In support of its motion for summary judgment, STO Industries attached the certificate of occupancy for Rippowam Manor, as well as an affidavit attesting to its authenticity. The certificate is dated January 24, 1984, and therefore, any negligent act or omission by STO Industries must have occurred on or before that date. Thus, in order to satisfy the statute of limitations found in 52-577, Kapetan and Gullotta's actions must have been brought by January 24, 1987.
However, in June of this year, the legislature passed Public Act 93-370, which provides in section one that "[n]otwithstanding any provision of chapter 926[3] of the general statutes, an action for indemnification may be brought within three years from the date of the determination of the action against the party which is seeking indemnification by either judgment or settlement." Since the case at bar was pending when the legislature enacted Public Act 93-370, the issue before this court is whether the Act applies retroactively.
The general proposition is that statutes of limitation are presumed to apply retroactively. Roberts v. Caton, 224 Conn. 483,488, 619 A.2d 844 (1993). "[A]bsent a clearly expressed legislative intent, legislation that affects only matters of procedure `is presumed to [be] applicable to all actions, whether in the absence of any expressed intention to the contrary.'" Id., quoting Lavieri v. Ulysses, 149 Conn. 396, 401, 180 A.2d 632 (1962). "Procedural statutes have been traditionally viewed as affecting remedies, not substantive rights, and therefore leave the procedural scheme intact." Moore v. McNamara, 201 Conn. 16, 22,513 A.2d 660 (1986). "`A statute of limitations is generally considered to be procedural, especially where the statute contains only a limitation as to time with respect to a right of action and does not itself create the right of action.'" Id., quoting Jones Destruction, Inc. v. Upjohn, 161 Conn. 191, 195,286 A.2d 308 (1971). "This is so because it is considered that the limitation merely acts as a bar to a remedy otherwise available." Moore v. McNamara, supra.
STO Industries argues that Public Act 93-370 effected a substantial change in the law by expanding the scope of the defendant's liability because an action is no longer barred by a finite passage of time. STO Industries further argues that Public Act 93-370 effected a significant change in the substantive rights of the defendants. CT Page 489
As the Supreme Court has noted:
 [i]f a statute gives a right of action that did not exist at common law, the limitations period contained therein is a condition attached to that right; Diamond National Corporation v. Dwelle, 164 Conn. 540, 543, 325 A.2d 259 (1973); and the entire statute is considered substantive rather than procedural. Also, even statutes that in their terms affect matters of procedure will not be given retroactive construction if they bring about a change in substantive rights.
Roberts v. Caton, supra, 489. "Therefore, if [a statute] as amended gave the plaintiff a right of action which would not have existed under common law, then the statute created a substantive change in the law and retroactive application would not be warranted." Roberts v. Caton, supra, 490. "Substantive rights are those that can be identified as existing between the parties at the time the cause of action accrued." Id.
A cause of action for indemnification is a common law action rather than a substantive right created by statute. Therefore, the statute of limitation for an indemnification action is not a condition attached to the right and is not substantive in nature.
STO Industries claims that the Act imposes a new obligation upon it which affects its substantive rights, i.e., the necessity of defending a claim for indemnification at some indefinite point in the future rather than the finite window of time provided by General Statutes 52-577. However, the Supreme Court has not recognized a vested right in the lapsing of a statute of limitations, but rather interprets a limitations period to be part of a remedy alone unless the statute in which the period of limitations is found itself creates the remedy. Roberts v. Caton, supra, 492. As noted above, Public Act 93-370 does not create a new remedy. "[T]he expansion or reduction alone of the period of limitations, if the statute in which the limitations period is fixed does not also create the right of action, does not by itself alter a substantive right." Id. Public Act 93-370 simply expands the statute of limitations. and does not create a substantive change in the rights of the defendant.
Finally, STO Industries argues that even if Public Act 93-370 is deemed to be procedural, considerations of good sense and justice dictate that it should not apply retroactively, as such CT Page 490 retroactive application would serve to contravene the purposes of statutes of limitation. "`[T]he test of whether a statute is to be applied retroactively is not a purely mechanical one and even if it is a procedural statute, which ordinarily will be applied retroactively without a legislative imperative to the contrary, it will not be applied retroactively if considerations of good sense and justice dictate that it not be so applied.'" Roberts v. Caton, supra, 492-93, quoting Sherry v. Probate Court, 177 Conn. 93,100-101, 411 A.2d 931 (1979).
In enacting Public Act 93-370, the legislature did not definitively state whether or not the Act would apply retroactively. However, the purpose of the Act is "[to insure] that the statute of limitations does not run against somebody before they even find out they have a right to be indemnified." Transcript of June 4, 1993 Debate of the House of Representatives, Remarks of Rep. Tulisano, June 4, 1993, p. 241. The legislative history indicates that the Act was passed in response to Protter v. Brown Thompson Co., supra.[4]
In Protter v. Brown Thompson Co., supra, 362, the issue before the Appellate Court was whether, in a fourth party action for indemnification, the limitations period begins to run on the date of the negligent conduct underlying the original cause of action, or on the date that a judgment for which a fourth party plaintiff seeks indemnification is rendered. The court, in finding that it begins to run three years from the date of the negligent conduct underlying the original action, noted that at common law, statutes of limitations did not begin to run until an action accrued, and an action for indemnification did not accrue until an entry of final judgment against a party seeking indemnification. Id., 364. However, "[b]y adopting the `act or omission complained of' language in 52-577, the Connecticut legislature distinguished the statute of limitations for torts from those of other jurisdictions, most of which begin to run only after a cause of action has accrued." Id. Therefore, "`because of the distinction created in the Connecticut limitations statute between the injury and the tortious conduct that caused it, it is, indeed possible, on occasions, to bar an action even before the cause of action accrues.'" Id., 365, quoting Prokolkin v. General Motors Corp., 170 Conn. 289, 296,365 A.2d 1180 (1976).
When Public Act 93-370 was introduced, Representative Radcliffe noted that "there is a serious injustice I think to a CT Page 491 potential defendant if we allow the state of the law to remain where it is on the basis of this Brown Thomaon [sic] case. . ." House Debate, Remarks of Rep. Radcliffe, p. 557. He further indicated that what the legislature was attempting to prevent by the passage of the Act was the injustice which results "when somebody is not even allowed a day in court, through no fault of his own, but because the court construes a statute of limitations as having run before he even had a cause of action for indemnification because he had not yet been made a party to the action. . ." Debate, Remarks of Rep. Radcliffe, p. 258.
In the case at bar, the latest date that any negligence by STO Industries could have occurred was January 24, 1984, since the building was fully constructed and ready to be occupied at that time. Under General Statutes 52-577, the statute of limitations would have barred any indemnification action based on tort brought after January 24, 1987. The original action by North Street was not brought until January of 1988, the same year in which the third party tort indemnification claims were filed. Therefore, under the interpretation of General Statutes 52-577 in Protter, Kapetan and Gullotta's causes of action for indemnification were barred before they even accrued. The case at bar therefore presents precisely the type of situation which the legislature was attempting to remedy with the passage of Public Act 93-370.
In Roberts v. Caton, supra, 493-94, the court noted that even though statutes of limitations generally operate to prevent the unexpected enforcement of stale claims, "[t]he defendant's assertion that he is now unexpectedly exposed to liability was an express purpose of the statute." This language also applies to the case at bar. The purpose of Public Act 93-370 is to prevent the statute of limitations from barring an indemnification action against a third party defendant before such an action even accrues. Accordingly, Public Act 93-370 is applied retroactively and STO Industries' motion for summary judgment as to Kapetan and Gullotta's claim for indemnification based on active/passive negligence is denied.
So Ordered.
Dated at Stamford, Connecticut, this 12th day of January, 1994.
William B. Lewis, Judge CT Page 492