PROSPER F. LAVIERI *v.* GEORGE ULYSSES ET AL.

CHARLES H. CONNELL *v.* STEVEN FEDUS ET AL.

J. ERIC CHADWICK ET AL. *v.* STEVEN F. FEDUS ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued February 9—decided·April 5, 1962

*William R. Davis,* for the appellant-appellee (plaintiff in the first case) and the appellee (plaintiff in the second case); with him, in the first case, were *Carmine Lavieri* and, on the brief, *Leon RisCassi;* with him, on the brief in the second case, were *Leon RisCassi* and *Edward S. Downes, Jr.*

*Charles G. Albom,* with whom was *Bernard Greenberg,* for the appellees-appellants (defendants Fedus in the first case) and the appellants (defendants in the second and third cases).

*Joseph P. Kenny,* with whom was *Thomas F. Wall,* for the appellees (plaintiffs in the third case).

KING, J. At about 11 o'clock in the evening of October 11, 1956, Prosper F. Lavieri, the plaintiff in the first case, and Florence M. Bonuomo, a plaintiff in the third case, were passengers in a Studebaker sedan which was owned by Charles H. Connell, the plaintiff in the second case, and was being operated by J. Eric Chadwick, the other plaintiff in the third case, in a northerly direction on route 85 in Salem. A car which was owned by Harry A.

Bolson and was being operated by him in a southerly direction on that highway went over to its left side of the road and crashed into the Connell car. There was no serious dispute that Bolson's improper operation of his car was the cause of the collision and that the plaintiffs were free from fault. They brought actions for damages under § 2172d of the 1955 Cumulative Supplement (as amended, General Statutes § 30-102),[1] popularly known as the Dram Shop Act, against the defendants Steven F. and Alice L. Fedus as the owners and operators of Chestnut Lodge, a restaurant in Colchester. The plaintiff in the first case also named as defendants George Ulysses and the Hub Restaurant, Inc., doing business as the Shamrock Cafe, a restaurant in Hartford. Bolson was not made a party defendant.

The three separate actions were (1) by the plaintiff Lavieri; (2), for property damage only, by the plaintiff Connell, who was not an occupant of his car at the time of the accident; and (3) by the plaintiffs Chadwick and Bonuomo. All were tried together. In each, a verdict was rendered against the defendants Fedus, who have appealed. In the first case, the jury found the issues for the defendants

---

[1] "Sec. 2172d. LIQUOR SELLER LIABLE FOR DAMAGE BY INTOXICATED PERSON. If any person, by himself or his agent, shall sell any alcoholic liquor to an intoxicated person, and such purchaser, in consequence of such intoxication, shall thereafter injure the person or property of another, such seller shall pay just damages to the person injured, to be recovered in an action under this section, provided the aggrieved person shall give written notice to such seller within sixty days of the occurrence of such injury to person or property of his intention to bring an action under this section. Such notice shall specify the time, date and the person to whom such sale was made, the name and address of the person injured or whose property was damaged, and the time, date and place where the injury to person or property occurred."

Ulysses and Hub Restaurant, Inc., and from the judgment on the verdict in their favor no appeal was taken. In that case, the plaintiff, Lavieri, appealed from the judgment setting aside the verdict of $30,000 because of his failure to file a remittitur of $5000, and the defendants Fedus, hereinafter called the defendants, took a cross appeal. They also appealed from the judgments in favor of the plaintiffs in the second and third cases. To some extent, all the appeals were consolidated, although a separate record was printed in the first case. Verdicts in the actions were rendered on March 16, 1960. The Dram Shop Act had been changed, effective July 1, 1959, by the insertion of the phrase "up to the amount of twenty-five thousand dollars" after the provision for the recovery of "just damages." Public Acts 1959, No. 631. The defendants persuaded the court to hold, in the first case, that this change was retroactively applicable to the action, although it was brought in 1956, and that the change limited Lavieri's permissible recovery to $25,000. On this ground, alone, the court rendered judgment setting aside the verdict unless a remittitur of $5000 was filed.

Basically, the 1955 Dram Shop Act authorized the recovery, by a party injured in person or property by reason of the intoxication of a second party, of just damages from a third party who sold the second party alcoholic liquor while he was intoxicated; and proof that the sale was a proximate cause of the intoxication which caused the injury was not necessary. *Pierce* v. *Albanese,* 144 Conn. 241, 250, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21. At the outset, it should be noted that we are not concerned with any question of the power of the legislature, under the

constitution, to make the 1959 change in the statute retroactive. Our question is whether the change is to be given a retroactive application even though the 1959 legislation contains no language expressive of any such intention. It is a rule of construction that legislation is not to be applied retroactively unless the legislature clearly expresses such an intent. *Michaud* v. *Fitzryk,* 148 Conn. 447, 448, 171 A.2d 397; *E. M. Loew's Enterprises, Inc.* v. *International Alliance,* 127 Conn. 415, 418, 17 A.2d 525; *Massa* v. *Nastri,* 125 Conn. 144, 146, 3 A.2d 839; *Skinner* v. *Watson,* 35 Conn. 124, 126. The rule is not applied, however, to legislation which is general in its terms and affects only matters of procedure. Such legislation is presumed to have been intended to be applicable to all actions, whether pending or not, in the absence of any expressed intention to the contrary. *E. M. Loew's Enterprises, Inc.* v. *International Alliance,* supra; *Neilson* v. *Perkins,* 86 Conn. 425, 428, 85 A. 686.

We have said that the Dram Shop Act, although in a sense penal, is primarily remedial in nature. *Pierce* v. *Albanese,* supra, 249, 251. This does not mean, however, that it is primarily procedural. "It may be questionable whether the . . . [exception to the general rule of construction] applies to all statutory changes which affect only remedies. The basis of the presumed intention that statutes affecting substantive rights shall not apply to pending actions is no doubt the injustice of changing the grounds upon which an action may be maintained after it has been brought. . . . 'The word "remedy" itself conceals at times an ambiguity, since changes of the form are often closely bound up with changes of the substance. . . . In the end, it is in considerations of good sense and justice that the solution

must be found.' " *E. M. Loew's Enterprises, Inc.* v. *International Alliance, supra.* "Our search for the legislative intent may not, then, in all instances stop with the determination that a statute concerns procedure alone." *Demarest* v. *Zoning Commission,* 134 Conn. 572, 575, 59 A.2d 293. Here the 1959 act, in a sense, affects the remedy, because it curtails the amount of recovery previously permitted. But the Dram Shop Act, prior to the 1959 change, gave a plaintiff a substantive right to recover "just damages." The 1959 act, by limiting the amount of the damages recoverable to $25,000, went far beyond any mere question of procedure. It sharply curtailed a substantive right. Legislation which limits or increases statutory liability has generally been held to be substantive in nature. *Herrick* v. *Sayler,* 245 F.2d 171, 174 (7th Cir.); *Field* v. *Witt Tire Co.,* 200 F.2d 74, 77 (2d Cir.); *Flores* v. *Jack Spot Inn, Inc.,* 17 Ill. App. 2d 1, 7, 149 N.E.2d 498; *Lichter* v. *Scher,* 11 Ill. App. 2d 441, 450, 138 N.E.2d 66. The 1959 act was clearly substantive in nature, and it contained nothing indicative of an intent that it should apply to pending actions.

This conclusion is reinforced, if any reinforcement is necessary, by General Statutes § 1-1, which provides, in part, that "[t]he passage or repeal of an act shall not affect any action then pending." This statute has been held to be "merely declaratory of . . . [the usual] rule of construction." *Neilson* v. *Perkins,* 86 Conn. 425, 427, 85 A. 636; *E. M. Loew's Enterprises, Inc.* v. *International Alliance, supra,* 420. The defendants seem to claim that § 1-1 is inapplicable because the 1959 act was "amendatory" in nature. It may well be that it was amendatory in nature. *Simborski* v. *Wheeler,* 121 Conn. 195, 200, 183 A. 688. But whether it was

amendatory or not is immaterial, since its enactment constituted the "passage . . . of an act" within the express provisions of § 1-1. The change limiting recovery to $25,000 did not affect the first case, and the trial court was therefore in error in ordering the remittitur of $5000.

The claims in the defendants' cross appeal in the first case may be divided into two main groups. One group consists of claims of error affecting the issue of liability, claims which are also made in the defendants' appeals in the second and third cases. The other group consists of claims of error connected with the issue of the amount of damages awarded Lavieri. For convenience, we first consider such of the claims affecting the issue of liability as the defendants have raised in their brief. Maltbie, Conn. App. Proc. § 167, p. 208; *Bridgeport Hydraulic Co.* v. *Stratford,* 139 Conn. 388, 390, 94 A.2d 1. These include claims of error in two rulings on evidence.

The plaintiff Lavieri called as a witness Dr. Abraham Stolman, a toxicologist. He testified concerning tests he had made of Bolson's blood and urine, tests the results of which were indicative of intoxication. Dr. Stolman was then examined by counsel for the plaintiffs Bonuomo and Chadwick and was asked whether it was not true that a person (bartender) who daily sees persons consuming alcoholic liquor is better able to judge the state of sobriety or intoxication of a consumer than is a person who does not have such contacts. A previous question along the same line had been objected to and voluntarily reframed by counsel, no ruling on the objection being made. The witness had answered in the affirmative before the replacement of the question. Although in a jury case it is the safer

practice for the court to strike out such an answer, to make it clear to the jury that they must not consider it, we cannot find reversible error, and indeed none is claimed, in the failure of the court so to do here. *Hackenson* v. *Waterbury,* 124 Conn. 679, 684, 2 A.2d 215. The question as reframed was objected to, in rather ambiguous language, on the ground that the witness did not know the state of sobriety of the bartender making the observation. The court overruled the objection, and the witness answered in the affirmative. The claim is now made that the admission of the evidence was erroneous on the ground that (1) a proper subject of expert testimony was not involved, and (2) in any event there was no evidence that Dr. Stolman had the qualifications to enable him to give an expert opinion concerning the powers of judgment of a bartender in such matters. Had these grounds of objection been communicated to the court, it is hardly possible that the objection would not have been sustained. The failure of the defendants to comply with our rule (Practice Book § 155) obviously misled the court, diverted its attention from the real point involved, and caused the erroneous admission of the evidence. Reversible error cannot be predicated upon this ruling. *Casalo* v. *Claro,* 147 Conn. 625, 629, 165 A.2d 153. Although this discussion is dispositive of, and fatal to, the defendants' claim of error, it may be pointed out that the claim regarding bartenders' experience and judgment could have been made in argument anyway, as a matter of claimed common knowledge, and there is no ground for believing that the erroneous ruling was materially harmful.

Joseph Chmurynski was called by the plaintiff Lavieri and testified that the accident took place in

front of his, Chmurynski's, house; that the police arrived about an hour later; that the defendant Steven Fedus reached the scene about an hour after the accident and talked with Bolson; and that he, Chmurynski, was interviewed by the police afterwards but did not tell them about seeing Fedus and Bolson talking. On cross-examination, Chmurynski was asked who was the first person in the world he told about the conversation between Bolson and Fedus. The plaintiff Lavieri objected, assigning no ground. No claim was made for the admissibility of the question. On this state of the record, the court sustained the objection. Here again, had the cross-examiner given the court a bare intimation of the ground on which the question was claimed—it now seems to be that Fedus was going to claim that he was not at the scene of the accident at all—the court would have been alerted to the purpose of the question and would in all likelihood have admitted it. Since the ruling occurred when Lavieri's case was being presented, the court would have no way of knowing what Fedus' claim in this respect would be. Certainly, under these circumstances, error cannot be predicated on the exclusion of the question. *Casalo* v. *Claro*, supra, 630; *Fahey* v. *Clark*, 125 Conn. 44, 48, 3 A.2d 313.

The statutory notice of injury given by each of the plaintiffs (except Lavieri) was signed by his attorney rather than by himself. The defendants objected to the admission of any notice not personally signed. This claim of error did not apply to the first case, since Lavieri's notice was personally signed. The court overruled the objection. The ruling was correct. The statute requires a plaintiff to "give written notice to . . . [the] seller." It does not require that a plaintiff give a "signed" written

notice to the seller. The case of *Ball* v. *Town Plan & Zoning Commission,* 146 Conn. 397, 402, 151 A.2d 327, on which the defendants seem to rely, does not support their claim. The statute involved in that case called for a protest "signed by the owners." This court properly held that an actual signature was required. The statute involved here contained no such requirement.

Two exceptions were taken to the charge with respect to the issue of damages for loss of earnings and impairment of earning capacity in the Lavieri case. The basic claim revolves around the fact that, owing to previous injuries wholly disconnected with the present accident, Lavieri was in a partially disabled condition. He was not, of course, entitled to recover from these defendants for disabilities, or losses flowing from them, unless they were proximately caused by this accident. On the other hand, he was entitled to recover for actual disabilities and losses suffered as a proximate consequence of the accident, even though they were, by reason of his antecedent mental and physical condition, greater than they otherwise would have been. *Mourison* v. *Hansen,* 128 Conn. 62, 65, 20 A.2d 84. These principles were covered in the charge as given. The defendants excepted to the charge on two grounds. The first was that the court failed to comment sufficiently on testimony with reference to payments received by Lavieri from certain corporations in which he was interested as a part owner and from which he had received a salary during his period of disability. In the light of the charge, this exception was without merit. Had the defendants wished extended discussion of the application of the law regarding damages to this particular portion of the evidence, they should have filed an appropriate

request to charge. *Furber* v. *Trowbridge,* 117 Conn. 478, 483, 169 A. 43; *Blake* v. *Waterbury,* 105 Conn. 482, 484, 136 A. 95.

By the second exception, the defendants claimed that the jury's attention should have been called to the fact "that they and they alone were the judges as to whether these were gratuities or whether they were as claimed by the defendant Fedus actual payments over earnings that he had received in the due course of business." The meaning of this is obscure. The court did not attempt to respond to it and probably did not understand its purport. The defendants now claim that it referred to their claim that Lavieri had failed to prove that he had any occupational ability at the time of this accident, and their claim that the payments were made as a result of his status as an executive and part owner of the corporations making the payments and therefore were not evidence of the value of the impairment of his earning capacity under the rule of cases such as *Davis* v. *P. Gambardella & Son Cheese Corporation,* 147 Conn. 365, 370, 161 A.2d 583. The court charged that the burden of proving damages was on Lavieri, referred to his previous accidents, and pointed out that evidence as to wages earned by him might, as a measure of damages for impairment of earning capacity, be open to qualification, in view of various circumstances in evidence. This statement was not incorrect. *Lashin* v. *Corcoran,* 146 Conn. 512, 514, 152 A.2d 639. In effect, it left the weight of the evidence to the jury under the circumstances of the case, which was about what the defendants, in their exception as they now construe it, claimed should be done. A more specific response to what the defendants now claim is the purport of the exception might have improved the charge. But because of the

ambiguous and obscure phraseology of the exception, and the consequent unlikelihood that the court understood what the claim was, we cannot find reversible error.

There remain the claims that the Lavieri, Chadwick and Bonuomo verdicts were excessive. The claim with respect to the Lavieri verdict is largely based on the contention that there was no evidence from which the jury could find any loss of earnings or earning capacity. Lavieri was faced with a difficult problem of proof on this point, as would be so in the case of anyone who had had the misfortune to sustain disabling injuries in previous accidents. See cases such as *Federman* v. *Stamford*, 118 Conn. 427, 431, 172 A. 853. Although the burden of proof was on him, proof equivalent to a mathematical demonstration was not required. *Sadonis* v. *Govan*, 132 Conn. 668, 670, 46 A.2d 895. Here the evidence was meager, but it was not so inadequate that the jury could not have made any allowance on the basis of it. Nor is there anything to indicate that the allowance which they made was excessive. The jury could find medical special damages in the amount of slightly over $3000. Lavieri's physical injuries included injuries to his head which caused a diplopia of the left eye which persisted to the time of trial, although its permanency was not established; a compound, comminuted fracture of the left patella; cuts and contusions; and a fracture of the left tibia and fibula. Removal of the left patella was required, and this left a 40 percent permanent disability of the left lower leg. He was sixty-one and had an actuarial expectancy of about fifteen years. Although the verdict was liberal, we cannot find that the trial court abused its large discretion in refusing to set the verdict aside as excessive,

especially in view of the painstaking consideration manifested in the memorandum of decision. *Pischitto* v. *Waldron,* 147 Conn. 171, 175, 158 A.2d 168.

The same may be said of the refusal of the court to set aside the $2500 verdict in favor of the plaintiff Chadwick and the $4000 verdict in favor of the plaintiff Bonuomo. As to Chadwick, the jury could find medical special damages in the amount of $154 and a loss of wages of about $250. Chadwick sustained physical injuries, none of which were permanent. They consisted of four fractures of a rib, a sprain of the neck, and multiple bruises and abrasions throughout his body. As to Florence Bonuomo, the jury could find medical special damages of about $133 and a loss of wages of about $215. She sustained a laceration over the right eye which has left a permanent scar, and also the following nonpermanent injuries: a sprain-type fracture of the left ankle, a sprain of the neck, contusions about both eyes, a cerebral concussion, and multiple contusions about the body. For a year she was unable to skate or ski.

There is error on the appeal of the plaintiff in the first case, and the case is remanded with direction to render judgment on the verdict; there is no error on the appeals of the defendants Fedus in the three cases.

In this opinion the other judges concurred.