AETNA LIFE AND CASUALTY COMPANY *v.*
MARIE BRACCIDIFERRO
(11058)

Landau, Freedman and Schaller, Js.

Argued November 3, 1993—decision released June 28, 1994

*Michael P. Del Sole,* with whom, on the brief, was *Rene G. Martineau,* for the appellant (plaintiff).

*George H. Romania,* for the appellee (defendant).

*William Gallagher, Cynthia C. Bott, Kurt Koehler,* law student intern, and *Thomas J. Airone,* law student intern, filed a brief for The Connecticut Trial Lawyers Association as amicus curiae.

LANDAU, J. This is an appeal by the plaintiff, Aetna Life and Casualty Company (Aetna), from the denial by the trial court of an application to vacate, correct or modify the award of the arbitration panel to the defendant, Marie Braccidiferro. Aetna claims that the trial court improperly denied the application because the defendant's claim for underinsured motorist benefits, made more than two years after the date of the accident that forms the basis of that claim, was time barred. After this court heard arguments on appeal, we ordered supplemental briefs to address the effect, if any, of Public Acts 1993, No. 93-77 (P.A. 93-77), approved on May 20, 1993, to take effect upon passage.

The following facts are relevant to this appeal. On March 18, 1986, Aetna issued an insurance policy to Braccidiferro's husband that provided, inter alia, cover-

age for injuries and damages sustained as a result of the negligence of an owner or operator of an uninsured motor vehicle. On April 1, 1986, Braccidiferro sustained personal injuries when the vehicle she was operating was struck by a vehicle operated by Michael Murgo. Murgo's liability coverage provided by Nationwide Insurance Company (Nationwide) totaled $50,000. On April 25, 1989, Nationwide agreed to pay Braccidiferro the policy's full liability benefits, thereby exhausting the liability coverage on the underinsured vehicle. On May 5, 1989, Braccidiferro submitted a written claim for underinsured motorist benefits to Aetna pursuant to the policy.[1] Aetna disclaimed liability because the claim had not been presented on or before April 1, 1988.

Pursuant to the policy, the dispute was submitted to arbitration and the arbitrators, in a split decision, found liability under the policy, rejecting the claim that the underinsured motorist claim was barred by a two year limitation under the policy. The majority found the

---

[1] The insurance policy issued by Aetna, under which benefits were sought, provides in pertinent part:

"PART C. UNINSURED MOTORISTS COVERAGE

"1. The INSURING AGREEMENT is amended as follows.

"a. The following is added to the first paragraph: We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements.

"b. Item 5 is added to the definition of 'Uninsured motor vehicle': 5. Which is an underinsured motor vehicle.

\* \* \*

"PART F. GENERAL PROVISIONS

\* \* \*

"2. The LEGAL ACTION AGAINST US provision is replaced by the following: LEGAL ACTION AGAINST US

"No legal action may be brought against us until there has been full compliance with all the terms of this policy.

\* \* \*

"In addition, under Part C, no legal action may be brought after two years from the date of accident."

claim to be timely[2] and awarded the defendant damages. The trial court granted the defendant's motion to confirm the award and denied Aetna's application to vacate, correct or modify the award. This appeal followed.[3] At the original appellate hearing, Aetna claimed that this appeal was controlled by the *McGlinchey* decision as that case involved the identical policy language and the same arguments. *McGlinchey* v. *Aetna Casualty & Surety Co.*, 224 Conn. 133, 617 A.2d 445 (1992). Braccidiferro agreed that the *McGlinchey* case "dealt with, and decided specific issues presented before this court," but claimed that "the policy provision in [her] case appear[s] to be different than those before the court in . . . *McGlinchey*," and urged this court to rule independently on the policy provision's ambiguity.

At oral argument, this court, concerned with the effect, if any, of P.A. 93-77, effective May 20, 1993, on the sole issue before it, ordered supplemental briefs filed.[4]

---

[2] The arbitration panel gave the following reasons, whether appropriate or not, for its decision: "[General Statutes §] 38-27 authorizes an insurer to establish time limits within which claims shall be submitted. It talks about 'uninsured motorist claims.' The claim in issue is an 'underinsured motorist claim.' Further, the statute does not limit the time within which claims can be submitted. It authorizes the insurer to so limit if it desires. Ordinarily in the construction of statutes and contracts the word shall imports a mandatory obligation, and the word may imports a discretionary action. Aetna included the word may in its provision, not the mandatory shall. Still further, the statute addresses itself to uninsured motorist claims, not underinsured claims. The former accrues as of the date of accident with the uninsured motor vehicle. The latter accrues only upon the exhaustion of the underlying coverage by payment of a settlement or a judgment. Until exhaustion occurs there is no underinsured motorist claim. It would be unfair to impose the limitations authorized by § 38-27 upon an underinsured motorist claim before it exists."

[3] On March 26, 1992, this court granted Aetna's motion to stay this appeal until twenty days after the decision of the Supreme Court in *McGlinchey* v. *Aetna Casualty & Surety Co.*, 224 Conn. 133, 617 A.2d 445 (1992) (decision released December 8, 1992).

[4] Public Acts 1993, No. 93-77, provides in pertinent part: "Sec. 3. (New) No uninsured or underinsured motorist claim or action pending on Decem-

This appeal is controlled by *McGlinchey*. We disagree with the defendant's claim that the policy language in this appeal is different from the language found in the *McGlinchey* policy. The trial court's analysis, employed in this case, as to statutory construction and ambiguity was rejected in *McGlinchey*, and, therefore, its decision must be reversed unless P.A. 93-77 requires a different result.

I

APPLICABILITY OF P.A. 93-77 TO THIS APPEAL

Aetna asserts (1) that P.A. 93-77 is inapplicable to the facts presented in this appeal, (2) that, if the act does apply to the facts in this appeal, the provisions of the act modify the previous two year limitation contained in the insurance policy to a three year limitation requirement and Braccidiferro's claim is still time barred, and (3) that, if the act applies to the facts presented in this appeal and invalidates the former valid policy limitation rather than modifies it, the act is unconstitutional as applied because (a) it violates article first, § 1, of the state constitution, (b) it violates the contract clause of the United States constitution and (c), applied retroactively, it deprives Aetna of due process of law, in violation of article one, § 10, of the United States constitution, the fourteenth amendment to the United States constitution and article first, § 10, of the state constitution. The defendant disagrees.

On or about May 20, 1993, P.A. 93-77 was signed into law. General Statutes § 38a-290, which dealt with an

---

ber 8, 1992, or brought after said date and prior to the effective date of this act, in which a settlement has not been reached or a final judgment has not been rendered prior to the effective date of this act, shall fail by reason of any contractual limitation in a motor vehicle insurance policy which limits the time within which such claim shall be submitted to arbitration or such action shall be commenced to a period of time less than that allowed under section 38a-336 of the general statutes, as amended by section 2 of this act."

insurer's ability to limit the time within which an insured can make a claim against a policy of insurance, was amended by the new statute with the additional language: "This section shall not apply to suits and arbitration claims under the uninsured or underinsured motorist provisions of a motor vehicle insurance policy." Public Acts 1993, No. 93-77. As to § 38a-336 of the General Statutes, the following provisions were added: "(e) No insurance company doing business in this state may limit the time within which any suit may be brought against it or any demand for arbitration on a claim be made on the uninsured or underinsured motorist provisions of a motor vehicle policy to a period of less than three years from the date of accident, provided, in the case of underinsured motorist claim the insured may toll any applicable limitation period (1) by notifying such insurer prior to the expiration of the applicable limitation period, in writing, of any claim which the insured may have for underinsured motorist benefits and (2) by commencing suit or demanding arbitration under the terms of the policy not more than one hundred eighty days from the date of exhaustion of the limits of liability under all automobile bodily injury liability bonds or automobile insurance policies applicable at the time of the accident by settlements or final judgments after any appeals.

"Sec. 3. (New) No uninsured or underinsured motorist claim or action pending on December 8, 1992, or brought after said date and prior to the effective date of this act, in which a settlement has not been reached or a final judgment has not been rendered prior to the effective date of this act, shall fail by reason of any contractual limitation in a motor vehicle insurance policy which limits the time within which such claim shall be submitted to arbitration or such action shall be commenced to a period of time less than that allowed under section 38a-336 of the general statutes, as amended by . . . this act.

"Sec. 4. This act shall take effect from its passage." Public Acts 1993, No. 93-77.

In this case, the judgment appealed from was rendered on January 4, 1992. An appeal was taken and pending on December 8, 1992. If the decision is affirmed, the date of judgment is the date the trial court rendered judgment; if the judgment is reversed, the date of judgment is the date of the Appellate Court's decision. *Connecticut Bank & Trust Co.* v. *Winters,* 225 Conn. 146, 160, 622 A.2d 536 (1993). Aetna claims that since a final judgment had been rendered prior to the effective date of P.A. 93-77, this case remains controlled by the Supreme Court decision in *McGlinchey* v. *Aetna Casualty & Surety Co.,* supra, 224 Conn. 133. Braccidiferro claims, first, that the act, by its very language, was intended to apply to all actions pending on or brought after December 8, 1992, that had not been settled or had not reached a final judgment. Thus, the case having been appealed, she asserts, there is no final judgment. She also argues that although the act affects substantive rights, it should be applied retroactively because the legislature has expressed such a clear intent. See *Darak* v. *Darak,* 210 Conn. 462, 468, 556 A.2d 145 (1989); *State* v. *Lizotte,* 200 Conn. 734, 741, 517 A.2d 610 (1986).

The first issue that we must examine is the meaning of the term "final judgment" as used by the legislature in P.A. 93-77. Aetna asserts that this phrase is unambiguous, and therefore urges us to adopt a definition that the appellate courts of this state have pronounced in cases involving Practice Book § 4000. See Practice Book § 4000; *State* v. *Curcio,* 191 Conn. 27, 463 A.2d 566 (1983). The defendant, however, prompts this court to find that the meaning of this phrase is ambiguous and unclear, requiring us to consider the legislative intent behind the act. We agree with the defendant.

" 'Although it is axiomatic that, where the statutory language is clear and unambiguous, construction of the statute by reference to its history and purpose is unnecessary; *Manchester* v. *Manchester Police Union,* 3 Conn. App. 1, 6, 484 A.2d 455 (1984); that axiom only applies in full force "[w]here . . . the language of a statute is . . . *absolutely* clear" on its face and where no ambiguity is disclosed by reference to its background. (Emphasis in original.) *Anderson* v. *Ludgin,* 175 Conn. 545, 552–54, 400 A.2d 712 (1978).' " *Dugas* v. *Lumbermens Mutual Casualty Co.,* 22 Conn. App. 27, 33, 576 A.2d 165 (1990). " 'A word or statute is ambiguous when capable of being interpreted by reasonably well-informed persons in either of two or more senses.' " *Federal Aviation Administration* v. *Administrator,* 196 Conn. 546, 554, 494 A.2d 564 (1985) (*Healey, J.,* dissenting), citing *Vernon* v. *Waukesha County,* 99 Wis. 2d 472, 477, 299 N.W.2d 593 (1980), aff'd, 102 Wis. 2d 686, 307 N.W.2d 227 (1981); 73 Am. Jur. 2d, Statutes § 258 (1974). The phrase "final judgment" is susceptible to two different meanings. The rules of practice describe "final judgment" as the moment when the right of appeal attaches to an action. See Practice Book § 4000. The alternative possibility is that the legislature meant final judgment in the sense of concluding the action.

Because this phrase is ambiguous, we must turn for guidance to the legislative history and to the purpose the statute was meant to serve. *State* v. *Mattioli,* 210 Conn. 573, 576, 556 A.2d 584 (1989). We conclude that when the legislature spoke in terms of "final judgment" it intended those words in the sense of concluding the action. The provisions of subsection (e) of § 2 of P.A. 93-77 support this interpretation. Subsection (e) sets the new three year limitation, provides for notice within that time period, and requires that suit or arbitration be commenced within 180 days after exhaustion. In set-

ting out the requirement of suit or arbitration within 180 days from the date of exhaustion, the legislature conditioned that exhaustion be by means of "settlements or *final judgments after any appeals.*" (Emphasis added.) Furthermore, this language is followed by the § 3 requirement applying the act's provisions to those actions pending on December 8, 1992, or thereafter that have not gone to "final judgment." Given the statute's language and framework, and considering that the legislature intended to encompass cases that had not been finally concluded on December 8, 1992, the date *McGlinchey* was published, a fair reading of the new provisions of P.A. 93-77 makes clear that the words "final judgment" mean final conclusion of the action after any appeals.[5]

This case was not finally concluded on December 8, 1992, because an appeal was pending in this court Therefore, P.A. 93-77 is applicable to the facts of this case.

## II

Aetna's next argument is that if P.A. 93-77 is applicable, the act's new three year time limitation for underinsured motorist claims displaces the insurance contract provision of a two year limitation within which to bring such claims. Therefore, because the claim was made three years from the date of the accident, Aetna argues, the defendant is still barred any recovery.

The statute does not provide clear guidance as to what would occur in preenactment policies that lawfully imposed a two year limitation within which to bring an underinsured motorist claim. Whether the three year limitation should be read into the language

---

[5] Because we have determined that the act's retroactive effect, though limited, is authorized by the statutory language, the defendant's alternative argument that P.A. 93-77 should be applied retroactively because of clear legislative intent is moot.

of the contract is a question of statutory construction and legislative intent. *Dugas* v. *Lumbermens Mutual Casualty Co.*, 22 Conn. App. 27, 33, 576 A.2d 165 (1990). The legislature addressed this very issue, and concluded that, where possible, the policies should be rewritten to conform to the new legislation. The legislature was cognizant, however, of the potential problem that policies with the two year limitation would become the focus of litigation prior to being rewritten. In such cases, the three year limitation would be imposed upon the claim.[6] This is a logical result because the contract was lawful when written, the parties to the contract intended that the minimum legal time limitation control underinsured motorist claims, and the law was written to have a retroactive effect on rights of the parties.[7]

Although three years expired between the date of the accident and the time that the claim was made for underinsured motorist benefits, we decline to bar recovery to the defendant in this case because a final determination is necessary, one properly made by the trial court. The remaining inquiry is whether the three year

---

[6] Our review of the legislative testimony discloses that proponents of the act first seem to advocate imposing the three year limitation on a policy that provides for a two year provision, and then seem to contradict this intent. In fact, however, the proponents intended that where, after the enactment of P.A. 93-77, an insurer either issued a policy with a time limitation less than three years in direct contravention of the statutory mandate, or where an insurer failed to rewrite a policy that provided a two year limitation before an underinsured motorist claim arose under the policy, the two year provision would be invalidated and a claim for underinsured motorist benefits would be time barred only by the usual statute of limitations for contract actions in this state, six years. Here, however, where the insurer's two year provision was in place before the act was enacted and became the focus of a controversy before the insurer could rewrite the policy, the three year limitation displaces the two year period.

[7] "[I]t is presumed that the parties bargained with each other on the basis of existing law. *Williamson* v. *Massachusetts Bonding & Ins. Co.*, 19 Conn. Sup. 59, 62, 109 A.2d 896 (1954)." *Aetna Casualty & Surety Co.* v. *Lighty*, 3 Conn. App. 697, 701, 491 A.2d 1118 (1985).

limitation, when read into the contract, was tolled by the means provided for in P.A. 93-77. This court cannot ascertain whether the provisions of the statute have been satisfied for tolling the limitation period. *William Raveis Real Estate, Inc.* v. *Stawski,* 31 Conn. App. 608, 612, 626 A.2d 797 (1993). Therefore, the question of whether Aetna received notification of the underinsured motorist claim for benefits in writing from the claimant prior to the expiration period, i.e., three years, is a question of fact to be determined by the trial court.[8]

## III

## CONSTITUTIONALITY OF P.A. 93-77

In light of our determination that P.A. 93-77 applies to this case, we now address the statute's constitutionality, which was properly raised by Aetna.[9] Aetna argues that, should this court find that P.A. 93-77 applies to the facts presented in this appeal and that the act vitiates the policy limitation rather than modifying it, then the act is unconstitutional as applied to this case in that (a) it violates article first, § 1, of the state constitution, (b) it violates the "contract clause" of the United States constitution, and (c) applied retroactively, it deprives Aetna of due process of law, in violation of article one, § 10, of the United States constitution, the fourteenth amendment to the United States constitution and article first, § 10, of the state constitution.

---

[8] According to the statute, notification must be in writing and alert the insurer of the underinsured motorist claim. Therefore, the fact that Aetna may have been the no-fault insurance carrier does not establish the proper notification.

[9] " 'Constitutional issues are not considered unless absolutely necessary to the decision of a case . . . or unless sufficient public interest warrants such a review.' *State* v. *DellaCamera,* 166 Conn. 557, 560–61, 353 A.2d 750 (1974)." *Chotkowski* v. *State,* 213 Conn. 13, 16–17, 566 A.2d 419 (1989). In this case, the constitutional issue of the validity of the act requires our consideration because resolution is absolutely necessary to a decision of the case.

## A

### STATE CONSTITUTIONALITY

Aetna first claims that the act violates article first, § 1, of the state constitution.[10] This constitutional provision, as it applies to time limitations within which claims may be brought, is indifferent to the wisdom of the limitation, but insists that it be applied uniformly. *Chotkowski* v. *State,* 213 Conn. 13, 18–19, 566 A.2d 419 (1989). The provision is applicable to legislation preferring certain individuals over others when wholly unrelated to the public interest. *Merly* v. *State,* 211 Conn. 199, 212, 558 A.2d 977 (1989). Aetna posits that here there is no valid public purpose because, prior to the enactment of P.A. 93-77, the public policy of the state was clearly enunciated in General Statutes § 38a-290 (d), which allowed two years from the date of the incident within which to assert a claim for underinsured motorists benefits. Aetna labels the legislation a grant to the defendant of "exclusive public emoluments or privileges" that is denied to others, i.e., the ability to bring an action more than two years after the date of the accident, a violation of article first, § 1. Aetna also argues that after-the-fact attempts by the legislature to revive claims that have been time barred have uniformly failed constitutional muster precisely because no public purpose has been perceived. See *Chotkowski* v. *State,* supra, 18–19; *Merly* v. *State,* supra, 212; *Vecchio* v. *Sewer Authority,* 176 Conn. 497, 408 A.2d 254 (1979); *Hillier* v. *East Hartford,* 167 Conn. 100, 355 A.2d 1 (1974); *Tough* v. *Ives,* 162 Conn. 274, 294 A.2d 67 (1974).

"[A] party challenging the constitutionality of a validly enacted statute bears the heavy burden of prov-

---

[10] Article first, § 1, of the state constitution provides: "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community."

ing the statute unconstitutional beyond a reasonable doubt." *Beccia* v. *Waterbury,* 192 Conn. 127, 133, 470 A.2d 1202 (1984). "[N]o enactment creating a preference can withstand constitutional attack if the *sole objective* of the General Assembly is to grant personal gain or advantage to an individual. Its validity is contingent, at least in part, upon its furthering a public purpose; if enacted with that end in view, legislation can be sustained even though it may incidentally confer a benefit upon an individual or a class." (Emphasis added.) *State ex rel. Higgins* v. *Civil Service Commission,* 139 Conn. 102, 106, 90 A.2d 862 (1952).

Applying the lessons of *Higgins,* we conclude that P.A. 93-77 does not violate article first, § 1, of the state constitution. First, a reasonable reading of the act does not lead to the conclusion that the act was intended, as its *sole objective,* to grant gain or advantage to an individual. A fair reading discloses that the act represents uniform legislation affecting the entire insurance industry and its consumers. The incidental effect of benefiting the defendant does not render the act unconstitutional.[11] Second, the act does further a public purpose. "The enactment of '[s]tatutes limiting the time within which an action may be brought are the result of a legitimate legislative determination which balances the rights and duties of competing groups.' . . ." *Ecker* v. *West Hartford,* 205 Conn. 219, 239–40, 530 A.2d 1056 (1987). Because it is based on a legitimate legislative purpose, P.A. 93-77 does not violate article first, § 1, of the Connecticut constitution.

---

[11] The cases cited by Aetna for the proposition that "after the fact attempts by the legislature to revive claims which were time barred have uniformly failed constitutional muster precisely because no public purpose has been perceived," are inapposite to the case at bar because they involve the constitutionality of special acts enacted solely for the benefit of a certain limited, named individual or group.

## B

CONTRACT CLAUSE

Next, Aetna argues that P.A. 93-77 violates the "contract clause" of the United States constitution. Article one, § 10, of the United States constitution provides in pertinent part: "No State shall . . . pass any . . . Law Impairing the Obligation of Contracts . . . ." It is recognized that this prohibition is not absolute but "must be accommodated to the inherent police power of the State . . . ." *Energy Reserves Group* v. *Kansas Power & Light Co.,* 459 U.S. 400, 410, 103 S. Ct. 697, 74 L. Ed. 2d 569 (1983).

In our determination of whether the act violates the contract clause, "the first inquiry must be whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." *Allied Structural Steel Co.* v. *Spannaus,* 438 U.S. 234, 244, 98 S. Ct. 2716, 57 L. Ed. 2d 727 (1978). This is ascertained by weighing certain factors: (1) the severity of the impairment, (2) the extent to which it frustrates a party's reasonable contractual expectations, and (3) the extent to which the subject matter of the impairment has been regulated in the past. *Schieffelin & Co.* v. *Dept. of Liquor Control,* 194 Conn. 165, 177–78, 479 A.2d 1191 (1984). "Minimal alteration of contractual obligations may end the inquiry at its first stage." *Allied Structural Steel Co.* v. *Spannaus,* supra, 245. "If, however, the impairment is severe, the legislation will be subjected to an increased level of scrutiny." *Schieffelin & Co.* v. *Dept. of Liquor Control,* supra, 178. Further, "if one buys into an enterprise already regulated in the particular to which he now objects, he buys subject to further legislation upon the same topic." Id.

We may assume, without deciding, that the act severely impaired the contractual relationship between

the parties. Since that hypothesis requires that the state regulation be further scrutinized, we next consider the reasonable expectation and regulatory facets of the question.

It is to state the obvious to report that the insurance industry is heavily regulated. The insurance industry is impacted by over 1000 statutes in this state, and has been subjected to extensive legislation dating as early as 1833.[12] In fact, it is a widely known fact that " '[t]he automobile liability insurance business is one which is extensively regulated; *Simonette* v. *Great American Ins. Co.,* 165 Conn. 466, 473, 388 A.2d 453 [1973] . . . .' *Roy* v. *Centennial Ins. Co.,* [171 Conn. 463, 473, 370 A.2d 1011 (1976)]." *Wilson* v. *Security Ins. Co.,* 213 Conn. 532, 539, 569 A.2d 40, cert. denied, 498 U.S. 814, 111 S. Ct. 52, 112 L. Ed. 2d 28 (1990). In this case, Aetna would be hard pressed to claim ignorance to the fact that it was engaged in a highly regulated business. Nor could it be unaware of the economic and social considerations created by uninsured and underinsured motorist problems. The comprehensive state regulation of the insurance industry made it reasonably foreseeable that the issue of a limitations period and an exhaustion requirement in uninsured and underinsured motorist coverage statutes could be subject to further legislation.

Given the insurance industry's intense regulation and the extensive period of our state's regulation, Aetna's reasonable expectations could not have been impaired

---

[12] "Laws regulating insurance first appeared in 1833. . . . In 1865, the legislature created a position of insurance commissioner, a gubernatorial appointment for a three-year term. The commissioner's responsibilities were to ensure that companies complied with the statute, and to refer those who did not to the State's Attorney." State of Connecticut, Legislative Program Review and Investigations Committee, Insurance Regulation in Connecticut p. 8 (January 1988).

by P.A. 93-77. The provision for a time requirement in which to file underinsured motorist benefit claims, in existence at the time the policy was written, had not endured the test of time. Complications had surfaced, none unbeknownst to Aetna, with the two year requirement in that insureds were finding that exhaustion of the underlying tortfeasor's coverage could take a considerable amount of time.[13] An expansion in the duration of an insurer's exposure to having claims asserted against it from two to three years cannot be regarded as a substantial impairment of the parties' contractual relationship. See *Schieffelin & Co.* v. *Dept. of Liquor Control,* supra, 194 Conn. 182.

Because we conclude that there was minimal impairment of the contractual relationship of the parties, further analysis is not required.[14] Thus, P.A. 93-77 does not violate the contract clause of the United States constitution.[15]

---

[13] The *McGlinchey* case itself, in which Aetna was a party, signaled serious problems with the time requirement in this area.

[14] "If the state regulation constitutes a substantial impairment, the State, in justification, must have a significant and legitimate public purpose behind the regulation . . . ." (Citation omitted.) *Energy Reserves Group, Inc.* v. *Kansas Power & Light Co.,* supra, 459 U.S. 411. The contract clause equation requires a final step to determine "whether the means chosen to implement the stated or perceived public purpose is constitutionally deficient," if we conclude first that the state law operates as a substantial impairment of the parties' contractual relationship. *Schieffelin & Co.* v. *Dept. of Liquor Control,* supra, 194 Conn. 184; *Energy Reserves Group, Inc.* v. *Kansas Power & Light Co.,* supra, 411.

[15] Even if we were to find that the act constitutes a substantial impairment of a contractual relationship, its passage may be justified because the state regulation has a significant and legitimate public purpose in both providing reasonable and fair guidelines for bringing uninsured and underinsured motorists actions and limiting a *legislative perceived* effect of the *McGlinchey* decision on the already overloaded judicial system. See *United States Trust Co.* v. *New Jersey,* 431 U.S. 1, 22, 97 S. Ct. 1505, 52 L. Ed. 2d 92 (1977).

## C

### DUE PROCESS

We are cognizant that General Statutes § 55-3 provides: "No provision of the general statutes, not previously contained in statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect," and that the presumption of legislative intent that statutes affecting substantial rights shall apply prospectively only. *Darak* v. *Darak,* 210 Conn. 462, 467, 556 A.2d 145 (1989). This presumption is rebutted only when the legislature " 'clearly and unequivocally' expresses its intent that the legislation shall apply retrospectively." Id., 468; *State* v. *Lizotte,* 200 Conn. 734, 741, 517 A.2d 610 (1986). The language of P.A. 93-77 demonstrates that it was intended by the legislature to apply retroactively. "The general rule is that laws are to be interpreted as operating prospectively and considered as furnishing a rule for future cases only, unless they contain language unequivocally and certainly embracing past transactions." *Massa* v. *Nastri,* 125 Conn. 144, 146–47, 3 A.2d 839 (1939). "It is a rule of construction that legislation is to be applied prospectively unless the legislature clearly expresses an intention to the contrary." *Moore* v. *McNamara,* 201 Conn. 16, 22, 513 A.2d 660 (1986). Section 3 of P.A. 93-77 states that it applies to any "uninsured or underinsured motorist claim or action pending on December 8, 1992, or brought after said date and prior to the effective date of this act . . . ." This is clear and unequivocal language that the section embraces past transactions falling within that particular time period.

Because we have concluded that P.A. 93-77 applies retroactively, we must consider Aetna's claim that the act violates due process constitutional guarantees set

out in the fourteenth amendment to the United States constitution and article first, § 10, of the Connecticut constitution. Aetna argues that it had a vested right in the insurance contract provision requiring written demand for arbitration to be brought within two years of the date of the accident. It further argues that the two year policy provision does not operate as a statute of limitation and that the act imposes new obligations in violation of the constitutions.

Our rule of statutory construction that legislation applies prospectively unless there is an expression to the contrary by the legislature "is rooted in the notion that it would be unfair to impose a substantive amendment that changes the grounds upon which an action may be maintained on parties who have already transacted or who are already committed to litigation. See *Lavieri* v. *Ulysses,* 149 Conn. 396, 401, 180 A.2d 632 (1962); *E. M. Loew's Enterprises, Inc.* v. *International Alliance,* 127 Conn. 415, 418, 17 A.2d 525 (1941). In civil cases, however, unless considerations of good sense and justice dictate otherwise, it is presumed that procedural statutes will be applied retrospectively. See *State* v. *Paradise,* 189 Conn. 346, 351, 456 A.2d 305 (1983); *Lavieri* v. *Ulysses,* supra [401]. Procedural statutes have been traditionally viewed as affecting remedies, not substantive rights, and therefore leave the preexisting scheme intact. See, e.g., *Sherry H.* v. *Probate Court,* 177 Conn. 93, 100–102, 411 A.2d 931 (1979)." *Moore* v. *McNamara,* supra, 201 Conn. 22.

" 'A statute of limitations is generally considered to be procedural, especially where the statute contains only a limitation as to time with respect to a right of action and does not itself create the right of action. *Jones Destruction, Inc.* v. *Upjohn,* 161 Conn. 191, 195, 286 A.2d 308 (1971).' *Collucci* v. *Sears, Roebuck & Co.,* 585 F. Sup. 529, 532 (D. Conn. 1984). This is so because it is considered that the limitation merely acts as a bar

to a remedy otherwise available. *Lewis* v. *Rosen,* 149 Conn. 734, 735, 181 A.2d 592 (1962)." *Moore* v. *McNamara,* supra, 201 Conn. 22.

Aetna is not unconstitutionally divested of its substantive rights without due process of law by P.A. 93-77 because there is not an issue of substantive law implicated. The act merely expands the period of time in which an insured may bring an arbitration action against the insurer for uninsured motorist benefits. Previous to the passage of the act, General Statutes § 38a-290 was merely an authorization by the legislature for insurance companies to reduce the six year statute of limitations normally implemented in contract actions to two years. The act modifies that authorization to a three year period. The statutorily authorized reduction of the limitations period contained in General Statutes § 38a-290 and P.A. 93-77 operates as a procedural limitation on available remedies rather than a substantive limitation on the rights conferred by statute. The act does not create a right of action but merely sets a minimum time period in which to bring the action. Should the procedural limitation period be removed, the right to bring the action still exists by virtue of General Statutes § 38a-336. Thus, we conclude that the statute authorizing a reduction of the statute of limitations is procedural and remedial, not directed to substantive rights, and can be applied retroactively without divesting Aetna of a substantive right without due process of law. *Miller* v. *Kirshner,* 225 Conn. 185, 203, 621 A.2d 1326 (1993).[16]

The case is remanded for a determination, applying P.A. 93-77, of whether the minimum three year period was tolled pursuant to the provisions of the act. In the

[16] The fact that Aetna may no longer have the ability to bar the defendant's claim for arbitration is simply an incident of the procedural modification imposed by P.A. 93-77. Aetna is subject to no new liability.

event that the trial court finds that the three year period has been tolled, the judgment is affirmed. In the event, however, that the court finds that the time period has not been tolled, the judgment is reversed and the case is remanded with direction to render judgment granting the application to vacate.

In this opinion the other judges concurred.