[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM DATED NOVEMBER 6, 1996
I. Factual and Procedural Background:
Most of the facts are not in dispute. On October 4, 1992, the plaintiff, Ricardo Velez, was a passenger in a vehicle driven by defendant Luis Martinez, Jr. The Martinez vehicle collided with another vehicle, operated by the defendant, Kevin Estey, resulting in serious personal injury to the plaintiff. On October 12, 1992, the plaintiff, through counsel, notified defendant Allstate Insurance Company (hereinafter "Allstate" or the "defendant") of his "claim for no fault insurance benefits" pursuant to the accident and a policy issued to Elise Gonzalez which provided coverage for the plaintiff. (See Affidavit of Ed Rorza, claims representative, in Reply Memorandum in Support of Motion for Summary Judgment.) Additional documentation relating to the accident was forwarded to Allstate on November 12, 1992, December 23, 1992, and on January 8, 1993. On November 11, 1993, the plaintiff forwarded a formal "Uninsured Motorist Claim" for uninsured/underinsured benefits to Allstate. (See Defendant's Memorandum of Law in Support of Motion for Summary Judgment, attachment.) It read, inter alia, "[p]lease consider this communication as a [sic] uninsured motorist claim."
Ten months later, the plaintiff commenced an action against the owners and operators of both vehicles, by summons and complaint, dated September 4, 1994. With permission from the court, the plaintiff joined Allstate as a defendant, by writ, summons and complaint, dated June 13, 1996. In its Motion to Cite In Allstate, dated May 24, 1996, the plaintiff stated that he had learned that of the $20,000/$40,000 liability policy maintained by the tortfeasor, only $4,000 was available to satisfy his claim. The balance had been distributed to other claimants. The record is not clear as to when the plaintiff learned of this deficiency. He commenced his action against Allstate by writ, summons and complaint within weeks of that disclosure, on June 13, 1996.
Allstate responded by moving for summary judgment on the ground that it could not be compelled to provide benefits to the plaintiff since a contract provision limiting the claims period to two years from the date of the accident had expired. The plaintiff responded with an objection to Allstate's motion for summary judgment, theorizing that the two-year limitation provision could not be enforced pursuant toPublic Act 93-77 § 2(e) (hereafter the "Act") and that there was a genuine issue of material fact as to whether the plaintiffs case was "pending" within the meaning of § 3 of the same Act.
II. Discussion
Allstate argues that summary judgment should be entered in its favor on the theory that it cannot be held liable to the plaintiff as a matter of law because the plaintiffs claim for CT Page 10180 underinsured motorist benefits against it was untimely, being outside the two-year limitation provided for in the contract of insurance between the parties. The plaintiff argues that the two-year contractual limitation in the insurance policy is unenforceable pursuant to Public Act 93-77 § 2(e), and that there remains a question of fact as to whether § 3 of the same act applies to specifically restore the right of the plaintiff to pursue underinsured motorist benefits notwithstanding the contractual limitation to the contrary. This court finds that § 3 of Public Act 93-77 is not applicable in this case. This court further finds that § 2(e) ofPublic Act 93-77 is applicable to claims brought after the effective date of the statute, including this plaintiff's claim and thus, invalidates the contract provision which sought to limit the period during which the plaintiff could effectively pursue a claim for uninsured or underinsured motorist benefits. Accordingly, defendant Allstate's motion for summary judgment must be denied.
A. Summary Judgment, Generally
"Practice Book § 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . ." (Citation omitted.) Doty v. Mucci,238 Conn. 800, 805 (1996). "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) Catzv. Rubenstein, 201 Conn. 39, 48 (1986). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the non-moving party . . ." (Citation omitted.) Doty, supra at 805. "The party moving for summary judgment has the burden of showing the absence of any genuine issue as to all material facts, which under applicable principles of substantive law, entitle him to judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." Practice Book § 381.
B. Statutory Construction
1. Generally
Resolution of this matter turns on the court's interpretation CT Page 10181 of Public Act §§ 2(e) and 3. "Statutory construction is a matter of law" to be decided by the court. See Keeny v. Town ofOld Saybrook, 237 Conn. 135, 160 (1996). The court's "analysis of the plaintiff s claim is guided by well established principles of statutory construction . . . [It will] consider first whether the language of the statute yields a plain and unambiguous resolution . . . Any latent ambiguity in the statutory language itself is normally resolved by turning for guidance to the legislative history and the purpose the statute is to serve . . ." (Citations omitted.) Fruin v. The Colonnade at OldGreenwich Ltd., 237 Conn. 123, 130 (1996). "A word or statute is ambiguous when capable of being interpreted by reasonably well-informed persons in either of two or more senses . . ." (Citations omitted; internal quotation marks omitted.) Aetna Life Casualty Company v. Braccidiferro, 34 Conn. App. 833, 840 (1994). The court may also "look to legislative history for guidance when a statute is silent as to a matter clearly encompassed in the purview of the statute . . ." (Citation omitted.) State v. Davis,229 Conn. 285, 293 (1994). "It is a basic tenet of statutory construction that the intent of the legislature is to be found not in an isolated phrase or sentence but, rather, from a statutory scheme as a whole . . ." Figueroa v. C and S BallBearing, 237 Conn. 1, 6 (1996). Every effort must be made "to construe a statutory scheme as a consistent whole . . . with a goal of reconciling its separate parts in order to render an overall reasonable interpretation . . ." (Internal quotation marks omitted; citations omitted.) Oller v. Oller-Chiang,230 Conn. 828, 840 (1994). "If a statute is capable of two constructions, one that is rational and effective in accomplishing the evident legislative object, and the other leading to bizarre results destructive of that purpose, the former should prevail . . ." (Citation omitted.) State v. Burns,236 Conn. 18, 23 (1996). "Furthermore, as remedial legislation,P.A. 93-77 must be afforded a liberal construction in favor of those persons, the plaintiff among them, whom the legislature manifestly in tended to benefit." Stevens v. Aetna Life Casualty Co., 233 Conn. 460, 469 (1995). McMahon v. Aetna Life Casualty Company, 42 Conn. App. 225, 228 (1996).
2. Public Act 93-77, § 3
The language of section 3 of Public Act 93-77 plainly requires that it not be applied to restore the plaintiffs claim against Allstate. The relevant portion of the section states that "[n]o uninsured or underinsured motorist claims or action pending CT Page 10182 on December 8, 1992, or brought after said date and prior to the effective date of this act, in which a settlement has not been reached or a final judgment has not been rendered prior to the effective date of this act, shall fail by reason of any contractual limitation in a motor vehicle insurance policy which limits the time within which such claim shall be submitted to arbitration or such action shall be commenced to a period of time less than that allowed under section 38a-336 of the general statutes, as amended by section 2 of this act." The act became effective on the date of its passage, which was May 20, 1993.P.A. 93-77 § 4. Serrano v. Aetna Insurance Company,233 Conn. 437, 443 (1995). Under these terms, the only claims that are eligible to be restored under section 3 are those which were pending as of December 8, 1992 and not finally resolved before May 20, 1993.
The plaintiffs claim[1] was not "pending" at that time within the meaning of the statute. The language of section 3 is not ambiguous. A claim will be deemed "pending" if the plaintiff has notified its insurer, prior to May 20, 1993, that he is pursuing an underinsured motorist claim against it, and the claim has not been finally adjudicated before that date. McMahon v.Aetna Lfe Casualty Company, supra, 42 Conn. App. 228. See e.g.Bayusik v. Nationwide Mutual Insurance Co., 233 Conn. 474 (1995) (parties conceded that a demand for arbitration made on April 11, 1990, and denied on April 29, 1993, fell within the prescribed period); Serrano v. Aetna Insurance Co., 233 Conn. 437 (1995) (action against insurer commenced by complaint on January 13, 1992 concededly fell within the reach of the savings provision);Aetna Life Casualty Co. v. Braccidiferro, 34 Conn. App. 833
(1994) (claim submitted to insurer on May 5, 1989, but not finally adjudicated before May 20, 1993); Kulsich v. AetnaCasualty Surety Co., Superior Court, judicial district of New Haven at New Haven, Docket No. 298498, 11 CONN. L. RPTR. 360
(April 15, 1994). See also Settani v. Aetna Casualty SuretyCo., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 312163, 15 CONN. L. RPTR. 648 (January 4, 1996) (Thim, J.) (claim first raised after May 20, 1993 had passed could not be saved by section 3); and Rivera v. AllstateInsurance Company, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 535646,14 CONN. L. RPTR. 350 (May 25, 1995) (Corradino, J.).
Here, although information began to flow to the defendant from the plaintiff soon after the accident, the plaintiff's first CT Page 10183 notice of the claim for uninsured-underinsured motorist benefits against Allstate was not made until November 11, 1993. Since the notice was given after the savings provision of P.A. 93-77 had expired, May 20, 1993, the plaintiffs complaint is not eligible to be restored.
As to the plaintiff s claim that the question of applicability of this section creates a question of material fact, the court is unpersuaded. "The applicability of a statute to a factual situation presents an issue not of fact but of law";Bainer v. Citicorp Mortgage, 44 Conn. Sup. 148, 154-55,12 CONN. L. RPTR. 428, aff'd 236 Conn. 212 (1996). Keeney v. Town of OldSaybrook, 237 Conn. 135, 160-61 (1996) ("Statutory construction is a question of law"). Therefore, the question does not present a genuine issue of material fact as the plaintiff contends.
3. Public Act 93-77, § 2(e)
Resolution of the proper application of section 2(e) cannot be gleaned from the language of the provision itself. Indeed, the statute is ambiguous on this point because it is reasonably susceptible to two or more interpretations. Aetna Life CasualtyCompany v. Braccidiferro, 34 Conn. App. 833, 840 (1994). Any latent ambiguity in the statutory language itself is normally resolved by turning for guidance to the legislative history and the purpose the statute is to serve . . ." (Citations omitted.)Fruin v. The Colonnade at Old Greenwich Ltd., supra, 123. From that perspective, it is apparent that the more rational construction of the provision, the one that is most likely to affect the legislative intent, requires application of section 2 (e) to the plaintiffs claim.
Section 2(e) reads that:
 No insurance company doing business in this state may limit the time within which any suit may be brought against it or any demand for arbitration on a claim be made on the uninsured or underinsured motorist provisions of a motor vehicle policy to a period of less than three years from the date of the accident, provided, in the case of an underinsured motorist claim the insured may toll any applicable limitation period (1) by notifying such insurer prior to the expiration of the applicable limitation period, in writing, of any claim which the insured may have CT Page 10184 for underinsured motorist benefits and (2) by commencing suit or demanding arbitration under the terms of the policy not more than one hundred eighty days from the date of exhaustion of the limits of liability under all automobile insurance policies applicable at the time of the accident by settlements or final judgments after any appeals.
The general purpose of codifying uninsured-underinsured motorist provisions was "simply to give an insured who [has been] injured in an accident the same resource he would have had if the tortfeasor had carried liability insurance equal to the amount of the insured's uninsured motorist coverage." American MotoristsInsurance Company v. Gould, 213 Conn. 625, 632, 569 A.2d 1105
(1990). It was to "protect the named insured and other additional insureds from suffering an inadequately compensated injury caused by an accident with an inadequately insured automobile."Florestall v. Government Employees Insurance Company,236 Conn. 299, 305 (1996). The purpose of the P.A. 93-77 amendment to the uninsured motorist statute was "to provide relief to insureds who in good faith reliance on a complex and apparently misleading statutory scheme had failed to file a claim for uninsured or underinsured motorist benefits within the two-year contractual limitation period" provided for in their contract of insurance and risked forfeiture of their benefits after the Supreme Court decided McGlinchey v. Aetna Casualty Surety Co., 224 Conn. 133,617 A.2d 445 (1992), and Hotkowski v. Aetna Life Casualty Co.,224 Conn. 145, 617 A.2d 451 (1992).[2] Stevens v. Aetna Life Casualty Company, supra, 233 Conn. 468.
The McGlinchey and Hotkowski decisions answered the lingering question of whether the statute at the time was enforceable, even though it permitted the two-year contractual limitation periods to commence running upon the happening of an accident. Serrano,supra at n. 7. "Prior to the publication of McGlinchey andHotkowski some insureds, in the good faith but mistaken belief that they were required by statute to ascertain and exhaust the tortfeasor's coverage prior to initiating an uninsured or underinsured motorist claim . . . had failed to file such a claim within the two-year period prescribed by [their policies]." Id.
(citing 36 H.R. Proc., Pt. 8, 1993 Sess. P. 2757, remarks of Representative Dale W. Radcliffe, and Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2. 1993 Sess., pp. 525, 541-47, remarks of William J. Gallagher). CT Page 10185
"[T]he fundamental objective of the legislature [was]. namely, to restore to those insureds the right to recover uninsured or underinsured motorist benefits in cases that had not been finally concluded prior to May 20, 1993." Id. 469 (discussing the first phase of the ameliorative measure, which was to make the remedy retroactive through section 3 of the Act). See also Aetna Life Casualty Company v. Braccidiferro, supra,34 Conn. App. 841 (interpreting the statute's language "final judgment" broadly, "given the statute's language and framework, and considering that the legislature intended to encompass cases that had not been finally concluded on December 8, 1992 . . ."):McMahon v. Aetna Life and Casualty Company, supra,42 Conn. App. 229 (quoting the Stevens language above); Kulisch v. AetnaCasualty Surety Company, Superior Court, judicial district of New Haven at New Haven, Docket No. 298498, 11 CONN. L. RPTR. 360
(April 15, 1994) (Reilly, J.) (noting that section 3 was intended to "apply retroactively to cases in which no final judgment had been rendered prior to December 8, 1992).
Notwithstanding that Public Act 93-77 is silent as to whether some or all claims would be controlled by its provisions upon enactment, that is "a matter clearly encompassed in the purview of the statute" which is answered by its legislative history. SeeAetna Life Casualty Company v. Braccidiferro, supra,34 Conn. App. 840. The legislature must have intended the statute to affect claims arising after its enactment, including the claim raised by the plaintiff. To comprehensively protect insureds who were attempting to proceed against their tortfeasors before seeking uninsured-underinsured motorist benefits, section 3 was made retroactive to the date that the McGlinchey and Hotkowski
decisions were published, December 8, 1992. The remedy provided for in section 3 filled the gap between the date that theMcGlinchey and Hotkowski decisions would have taken effect and the date that the permanent revisions were to become effective, May 20, 1993. The apparent goal was to disable the McGlinchey andHotkowski decisions, to prevent hardship from overcoming plaintiffs who would otherwise have been compelled to proceed under the then-existing "misleading statutory scheme." SeeStevens v. Aetna Life Casualty Company, supra, 233 Conn. 468. The legislature, therefore, created a seemingly airtight scheme to restore rights to insureds that judicial interpretations of the earlier statute had put in jeopardy. The legislators understood that a claim limitation contained in a policy that was "already in force" would be rendered unenforceable by passage of the Act. (See 36 H.R. Proc., Pt. 8, 1993 Sess. P. 2757, question CT Page 10186 of Representative Farr and comments that follow.)
The relevant provision was not phrased in terms of policy dates, but rather relied on language of "claims" as its reference point. P.A. 93-77 § 2(e). The provision establishes time frames in terms of when "a claim be made." Id. It explains its tolling requirements by reference to "motorist claim[s]" not policies, requiring that notice "of any claim" be given within a specified time period. Id. There is only one reference to the "terms of the policy" in section 2(e) and it does not purport to limit its application to policies purchased after the effective date of the Act. Equally important, the legislature "concluded that, where possible, the policies should be rewritten to conform to the new legislation." Aetna Life and Casualty Company v.Braccidiferro, supra, at 842. This history makes clear the intent of the legislature was not to create an occasionally applicable statute, but rather to expect insurers to bear the burden of accommodating the new law by making it enforceable at its inception.
The defendant urges a contrary construction that would "frustrate the legislative purpose by limiting the number of injured victims eligible for relief . . ." McMahon v. Aetna Lifeand Casualty Company, supra. Public Act 93-77 must be viewed as a whole in the context of a legislative scheme designed to protect insureds against contractual limitations that would potentially render their benefits irretrievable. The plaintiff in this case notified the insurer of his claim both indirectly and directly soon after the accident. Although his suit was not commenced within the two-year period set out in the contract of insurance between the parties, he established a record of diligence that suggests he is a good example of the injured plaintiff the legislation was designed to protect.
To hold that Public Act 93-77 was intended to provide spot relief to those whose claims were pending on December 8, 1992 and not finally concluded by the date the Act took effect, only, would be contrary to the rules of statutory interpretation. The court is bound to construe the statute liberally in favor of those it was designed to benefit; Stevens v. Aetna Life andCasualty Company, supra and McMahon v. Aetna Life and CasualtyCompany, supra. It must render a construction that reconciles the "separate parts in order to render an overall reasonable interpretation." Oller v. Oller-Chiang, supra. It is reasonable, logical and consistent with the overall purpose of the CT Page 10187 uninsured-underinsured motorist statute and its amendments to hold that section 2(e) applies to the plaintiff's claim. Applying it as such, the two-year contractual limitation on the plaintiff's policy is rendered unenforceable. Section 2(e) of P.A. 93-77
applies to the plaintiff's claim. Applying it as such, the claim was preserved by the notice received by Allstate on November 22, 1993, and is not time-barred.
III. CONCLUSION
For the foregoing reasons, defendants' motion for summary judgment is denied.
HANDY, J.