DONNA McGLINCHEY *v.* AETNA CASUALTY
AND SURETY COMPANY
(14512)

PETERS, C. J., CALLAHAN, BORDEN, BERDON and NORCOTT, Js.

*(One justice dissenting)*

Argued September 23—decision released December 8, 1992

*David C. Shaw,* for the appellant (plaintiff).

*Eugene A. Cooney,* with whom, on the brief, was *Rodd J. Mantell,* for the appellee (defendant).

*Joram Hirsch* and *William F. Gallagher* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

PETERS, C. J. The principal issue in this appeal is the enforceability of a provision in a contract for uninsured or underinsured motorist coverage that requires the insured to initiate collection proceedings within a two year period from the occurrence of an automobile accident. The plaintiff, Donna McGlinchey (insured), filed a demand for arbitration of an underinsured motorist claim pursuant to her insurance contract with the defendant, Aetna Casualty and Surety Company (insurer). The arbitrators decided in favor of her claim, but the trial court, in response to a motion to vacate the arbitration award, set the award aside on the ground that the insured's claim was time-barred. The insured appealed to the Appellate Court from the judgment of the trial court vacating the arbitration award. We transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c), and now affirm.

The following facts were stipulated by the parties and found by the trial court. On January 24, 1987, the insured, while driving her own vehicle, was injured in a two car accident caused by the negligence of another driver (tortfeasor). At the time of the accident, the

insured's uninsured[1] motorists coverage contract with the insurer provided that "the covered person may make a written demand for arbitration within 2 years of the date of [the] accident."[2]

The insured brought a lawsuit against the tortfeasor on October 12, 1988. Through discovery, the insured learned on March 1, 1989, that the tortfeasor's limit of liability insurance was $20,000. On March 9, 1989, the insured demanded, pursuant to the uninsured motorists provisions of her insurance contract, that the insurer submit to arbitration her claim to collect benefits for damages in excess of the tortfeasor's liability limits.[3]

A panel of three arbitrators found that the insured had suffered $220,000 in damages, and concluded that she was entitled to recover $200,000 from the insurer

[1] Pursuant to the terms of the insurance contract, the uninsured motorists provisions also apply to underinsured vehicles. See also General Statutes (Rev. to 1987) § 38-175c (recodified as § 38a-336). Because the contract identifies these provisions generally as "uninsured motorists" provisions, we adopt this language throughout our discussion of the insured's claim. Our resolution of the claim, however, applies equally to both uninsured and underinsured motorists coverage disputes involving the same issue here.

[2] The relevant portion of the policy provides: "Part C. Uninsured Motorists Coverage . . . 5. . . . If we and a covered person do not agree:

"1. Whether that person is legally entitled to recover damages from the owner or operator of an uninsured motor vehicle; or

"2. On the amount of damages; the covered person may make a written demand for arbitration within 2 years of the date of accident as follows:

"A. If the amount in demand is $40,000.00 or less, such arbitration proceeding shall be conducted by a single arbitrator. . . .

"B. If the amount in demand is more than $40,000.00, the covered person and the Company will each select an arbitrator. The two arbitrators will select a third. . . . The decision made by the arbitrator(s) will be binding. However, either party may make a written demand for trial . . . . If this demand [for trial] is not made within 60 days of the decision of the arbitrator(s), the amount of damages awarded by the arbitrator(s) will be binding."

[3] The insured exhausted the limits of the tortfeasor's liability coverage on August 4, 1989, when the tortfeasor paid the insured the full $20,000 available under the policy.

after a setoff to account for the $20,000 paid by the tortfeasor. The arbitrators construed the provision in the insurance contract that "the covered person may make a written demand for arbitration within 2 years of the date of the accident" as permissive rather than mandatory. According to the arbitrators' construction, the permissive arbitration provision created a contract that was ambiguous about the status of arbitration demands filed after the expiration of the two year period, and that ambiguity, therefore, had to be resolved in favor of the insured.

In the trial court, the insurer filed an application to vacate the award on the ground that the arbitrators had not enforced the two year time limitation contained in the policy, and the insured filed an application to confirm the award. Because this case involves compulsory arbitration of uninsured motorists coverage, the trial court correctly undertook a de novo review of the arbitrators' conclusions of law. See *Lumbermens Mutual Casualty Co.* v. *Huntley,* 223 Conn. 22, 26, 610 A.2d 1292 (1992); *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 191, 530 A.2d 171 (1987). The trial court agreed with the insurer's contention that the two year time limitation unambiguously barred the claim of the insured. The trial court, accordingly, granted the insurer's application to vacate, and denied the insured's application to confirm.

The insured appeals from the judgment in favor of the insurer on three grounds. She claims that: (1) the time limitation in the insurance policy is ambiguous and therefore does not require that a demand for arbitration of the underinsurance claim be made before the expiration of the two year limit set in the policy; (2) even if the time limitation is unambiguous, her demand for arbitration was timely because the limitation period did not begin to run until the tortfeasor's coverage had been exhausted; and (3) a two year limitation, measured

from the date of the covered accident, is unenforceable because it is void as against public policy. We are unpersuaded.

## I

The insured's first contention is that language in the insurance contract governing arbitration of uninsured motorists coverage is ambiguous and that this ambiguity must be resolved in favor of coverage. Analysis of a claim of ambiguity must proceed from well established rules for contract construction governing the interpretation of insurance contracts. See, e.g., *Kelly v. Figueiredo,* 223 Conn. 31, 35, 610 A.2d 1296 (1992); *Aetna Life & Casualty Co.* v. *Bulaong,* 218 Conn. 51, 58, 588 A.2d 138 (1991). Coverage provisions in an insurance contract are normally to be construed in accordance with the natural and ordinary meaning of the language found therein. *Kelly* v. *Figueiredo,* supra; *Beach* v. *Middlesex Mutual Assurance Co.,* 205 Conn. 246, 249, 532 A.2d 1297 (1987). There is no presumption that language in insurance contracts is inherently ambiguous. Only if the language manifests some ambiguity do we apply the rule that ambiguous insurance contracts are to be construed in favor of insureds and to provide coverage. *Kelly* v. *Figueiredo,* supra, 37; *Beach* v. *Middlesex Mutual Assurance Co.,* supra, 250.

The clause that the insured asks us to find ambiguous states that "the covered person may make a written demand for arbitration within 2 years of the date of [the] accident." The linchpin of the insured's argument for ambiguity is the use of the word "may." Because the clause instructs an insured that the insured "may" make a written demand within two years of an accident, without spelling out the consequences of a late demand, the insured maintains that the clause fails unambiguously to provide that coverage will be forfeited upon expiration of the two year time limitation.

The argument advanced by the insured is unpersuasive for a number of reasons. In context, the use of the word "may" is not ambiguous because it merely memorializes the fact that arbitration is an option that an insured is free to elect or to reject. This construction of "may" is consistent with its dictionary definition of granting permission, freedom or ability. See, e.g., Webster's Ninth New Collegiate Dictionary; Black's Law Dictionary (6th Ed.); and see *Morris* v. *Timenterial, Inc.,* 168 Conn. 41, 43, 357 A.2d 507 (1975); *Lee* v. *Lee,* 145 Conn. 355, 359–60, 143 A.2d 154 (1958). The insured has an option to demand arbitration only upon compliance with the explicit and unambiguous constraints of the terms of the option, including the obligation to initiate the arbitration demand within the stated time period. It is fanciful to suggest that the consequence of failure to observe the time constraint is anything other than a lapse of the right conferred by the option. Finally, it is the fact that arbitration is an option for the insured that, without creating ambiguity, obviates any need for an explicit clause denying the right to demand arbitration after two years from the date of the accident.[4] We concur, therefore, in the ruling of the trial court that, as a matter of law, there is no ambiguity in the clause limiting the insured's recourse to arbitration to a two year period after the occurrence of a covered accident.

## II

The insured next maintains that, even if the arbitration clause unambiguously establishes the period during which the insured may demand arbitration, the

---

[4] The arbitration clause has a different function from Part F of the insurance policy, which provides, in relevant part, that "[n]o legal action may be brought against us until there has been full compliance with all the terms of this policy. . . . In addition, under Part C ['Uninsured Motorists Coverage'], no legal action may be brought after two years from the date of the accident."

limitation period in her case must be deemed to have been tolled until she had a reasonable opportunity to liquidate her claim against the tortfeasor. This contention rests on *Continental Ins. Co.* v. *Cebe-Habersky,* 214 Conn. 209, 212–13, 571 A.2d 104 (1990), wherein we held that General Statutes (Rev. to 1989) § 38-175c (b) (1), now recodified as § 38a-336, imposes upon an underinsured motorist claimant, before recovering underinsured motorist compensation, the responsibility to exhaust payments for which the tortfeasor is liable.

In this case, the accident occurred on January 24, 1987, the action was commenced against the tortfeasor on October 12, 1988, discovery disclosed the tortfeasor's limited insurance coverage on March 1, 1989, and the tortfeasor's liability was exhausted by payment of $20,000 on August 4, 1989. The insured therefore maintains that she had two years after August 4, 1989, to pursue a demand to arbitrate her underinsured motorist claim against the insurer. We disagree.

Contracting parties are free to adopt an unambiguous contract provision requiring a demand for arbitration to be made "within 2 years of the date of [the] accident." See *Monteiro* v. *American Home Assurance Co.,* 177 Conn. 281, 286–87, 416 A.2d 1189 (1979). *Continental Ins. Co.* v. *Cebe-Habersky,* supra, does not hold to the contrary. The sole issue decided in that case was that, under the applicable statute, an insured had forfeited his underinsured motorist coverage by settling his claim against the tortfeasor in an amount less than the limit of the tortfeasor's liability coverage. The court had no occasion to consider what other limitations the contracting parties might properly impose on access to underinsured motorist coverage. It is worth noting, however, that *Continental Ins. Co.* v. *Cebe-Habersky,* supra, refused to countenance a good faith deviation from the statutory conditions imposed upon recovery

of underinsured motorist insurance. We see no reason why contractual conditions on underinsured motorist insurance are not equally enforceable.

### III

The insured maintains finally that an insurance contract's two year limitation on uninsured motorists arbitration actions, if measured from the date of the accident and not the date of the discovery of the tortfeasor's uninsured status,[5] is void as contrary to public policy. The insured contends that the two year limitation violates the policy of our uninsured motorists statutes that victims of automobile accidents are entitled to full financial redress for their injuries. See, e.g., *American Universal Ins. Co.* v. *DelGreco,* supra, 197; *Harvey* v. *Travelers Indemnity Co.,* 188 Conn. 245, 249, 449 A.2d 157 (1982).

The insured cannot prevail on this contention in light of the fact that the legislature, which is the source of public policy, has declared, in General Statutes (Rev. to 1987) § 38-27, now recodified as § 38a-290, that "[n]o insurance company doing business in this state shall limit the time within which . . . any claim shall be submitted to arbitration . . . [with respect to] the uninsured motorist provisions of a motor vehicle insurance policy to a period *less than two years* from the date of the accident . . . ." (Emphasis added.) The history of this enactment demonstrates that the legislature recognized that insurance carriers were free to contract for a

---

[5] We note that this claim, as articulated by the insured, focuses on the time when the insured discovered that the tortfeasor was underinsured. In the insured's earlier argument for tolling the limitation period, she would amend the contractual time limitation to begin at the time that an insured received payment from the underinsured tortfeasor. For present purposes, we can discern no difference in these alternate formulations of the insured's claims.

period of limitation of no less than two years.[6] We conclude, therefore, that the limitation clause at issue here, which parallels the statute authorizing the two year limit, does not violate public policy.[7]

The judgment is affirmed.

In this opinion CALLAHAN, BORDEN and NORCOTT, Js., concurred.

BERDON, J., dissenting. I disagree with the majority's conclusion that the two year contractual limitation for demanding arbitration for underinsured motorist coverage is enforceable.

In *Continental Ins. Co.* v. *Cebe-Habersky,* 214 Conn. 209, 571 A.2d 104 (1990), the majority of this court held that General Statutes (Rev. to 1989) § 38-175c (b) (1), now recodified as § 38a-336, prevents an insured from recovering underinsured motorist benefits until after the tortfeasor's liability has been exhausted. Practically speaking, it may take years of litigation, at trial and on appeal, to exhaust a tortfeasor's liability. As a result, it is often impossible to comply with this condition

---

[6] The arbitration provision was added to General Statutes § 38-27 by Public Acts 1985, No. 85-73. In the comments to the act, Senator Donald E. Schoolcraft remarked that, prior to the amendment, an "insurance company could say [that] arbitration has to be filed within one week, ten days, six months or a year. What we're saying, and all we're asking in this Bill . . . is . . . that the insurance company cannot set any time limit less than two years." 28 S. Proc., Pt. 4, 1985 Sess., p. 1279.

[7] Enforcement of the two year time limitation does not impose an insuperable burden on an insured, because a demand for arbitration can be timely filed even while claims against the tortfeasor are being pursued in another forum. *Continental Ins. Co.* v. *Cebe-Habersky,* 214 Conn. 209, 571 A.2d 104 (1990), did not hold that a claim against a tortfeasor and an arbitration action against an insurer cannot be initiated simultaneously. Furthermore, the insured in this case has not advanced a claim that, in the exercise of reasonable diligence, she would have been unable earlier to initiate her demand against the insurer and to discover the extent to which she could recover from the tortfeasor.

precedent to arbitration.[1] The majority addresses these concerns in footnote 7 of its opinion, merely by noting that an insured may bring an action to recover underinsured motorist benefits while litigation against the tortfeasor is pending. The majority's suggestion adds to the costs of litigation, further burdens our trial courts, and ignores the realities of litigation. Even if the insured's attorney could demand arbitration ethically,[2] the insured's claim for arbitration for underinsured motorist coverage could be summarily disposed of simply because the insured failed to satisfy the condition precedent of exhausting the tortfeasor's liability. This leads to absurd consequences.

The legislature set forth the public policy of this state when it enacted the statutory scheme to provide for underinsured motorist coverage. It intended that "every insured is entitled to recover for the damages he or she would have been able to recover if the [underinsured] motorist had maintained a policy of liability insurance" equal to the coverage limits of the insured's policy. *Harvey* v. *Travelers Indemnity Co.*, 188 Conn. 245, 249, 449 A.2d 157 (1982). The purpose of the legislation was "to provide broad coverage to victims of uninsured [and underinsured] motorists, and . . . [i]t was not the intent of the legislature . . . to

[1] Indeed, Justice Shea in his dissent in *Continental Ins. Co.* v. *Cebe-Habersky,* 214 Conn. 209, 214, 571 A.2d 104 (1990), cogently pointed out the following: "The effect of the majority's holding is to require a victim who has uninsured motorist coverage exceeding the limit of the tortfeasor's liability insurance to obtain the last dollar of that insurance under the penalty of losing the entire benefit of his uninsured motorist coverage. By requiring the victim to obtain the full amount of the tortfeasor's liability coverage before proceeding against the uninsured motorist carrier, the majority has erected a barrier to the settlement of liability claims that is likely to have a serious impact upon our overburdened jury trial docket."

[2] Rule 3.1 of the Connecticut Rules of Professional Conduct provides in pertinent part: "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law."

offer protection with one hand and then take a part of it away with the other." (Internal quotation marks omitted.) Id., 250–51, quoting *State Farm Mutual Automobile Ins. Co.* v. *Hinkel,* 488 P.2d 1151, 1153 (Nev. 1971). Because this court's holding in *Continental Ins. Co.* v. *Cebe-Habersky,* supra, requires an insured to exhaust a tortfeasor's policy, a two year contractual limitation for a demand for underinsured motorist arbitration violates the purpose of the legislation and offends public policy.[3]

The two year contractual limitation in the defendant's policy cannot stand for another reason. Although the failure to comply with a limitation period in an insurance contract is a defense to an action on the policy, such a contractual provision will not be enforced if there "is a valid excuse for nonperformance." *Monteiro* v. *American Home Assurance Co.,* 177 Conn. 281,

---

[3] The majority's claim that the plaintiff's public policy argument fails because General Statutes (Rev. to 1987) § 38-27, now recodified as § 38a-290, allows the insurer to include a two year limitation in its policy is not persuasive. Of course, the legislature is the final arbiter of our public policy. *Laurel Bank & Trust Co.* v. *Mark Ford, Inc.,* 182 Conn. 437, 442, 438 A.2d 705 (1980). Although statutes and regulations that are applicable to uninsured motorist coverage usually apply to underinsured motorist coverage as well, § 38a-290 must be limited to its precise language in this case—that is, it must be limited to apply only to "uninsured" motorist provisions and not "underinsured" motorist provisions. This limited construction makes sense because one who brings a claim for uninsured motorist coverage knows almost immediately whether the tortfeasor has insurance. In contrast, a claim for underinsured motorist coverage involves the more complicated tasks of determining how much coverage is available followed by measures to exhaust such coverage. "Where the terms of the policy are of doubtful meaning, the construction most favorable to the insured will be adopted." (Internal quotation marks omitted.) *Beach* v. *Middlesex Mutual Assurance Co.,* 205 Conn. 246, 250, 532 A.2d 1297 (1987), quoting *LaBonte* v. *Federal Mutual Ins. Co.,* 159 Conn. 252, 256, 268 A.2d 663 (1970). "In construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result. . . . Statutes must be construed, if possible, that absurdity and mischief may be avoided." (Citations omitted; internal quotation marks omitted.) *Ford Motor Credit Co.* v. *B. W. Beardsley, Inc.,* 208 Conn. 13, 20, 542 A.2d 1159 (1988).

283, 416 A.2d 1189 (1979). In the present case, the condition precedent imposed by the majority of this court in *Continental Ins. Co.* v. *Cebe-Habersky,* supra, constitutes a valid excuse. Furthermore, the law suspends performance of contractual obligations when performance becomes impractical or its purpose is frustrated. 2 Restatement (Second), Contracts § 269 (1982). It is simply impractical to require an insured to demand arbitration of an underinsured motorist claim before it can be determined whether the tortfeasor's liability has been exhausted.

The majority's ruling today allows the insurer to have it both ways. The insured must exhaust every last dollar of the tortfeasor's insurance in order to be eligible for underinsured coverage, and yet, the insured must initiate arbitration proceedings within a time period that is often insufficient to allow exhaustion of the tortfeasor's liability.

For the foregoing reasons, I would find that the two year contractual limitation should not be enforced as to underinsured motorist coverage.[4] I would, therefore, reverse the trial court's judgment and remand this matter with instructions to deny the defendant's application to vacate and render judgment on the plaintiff's application to confirm the award to the plaintiff in the sum of $180,000.

Accordingly, I dissent.

---

[4] As noted in footnote 3, uninsured motorist coverage involves different considerations.