[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
This is the defendant insurer's motion for summary judgment. After reading the brief objecting to the motion for summary judgment, it is the court's understanding that the plaintiff has, in effect, withdrawn his claims in Count One (Dram Shop Act) and Count Two (Gross Negligence, sale of alcohol).[1] As to Count Four (CUTPA and punitive damages), the plaintiff takes "no position" on this his own claim. The court has read the defendant's brief and, for the reasons stated therein, there is no basis for the allegation set forth in Count Four. The court then will only address what it perceives to be the remaining claim which is set forth in Count Three, the so-called negligence claim.
In this case, the plaintiff was injured in a barroom assault. He sued the proprietor of the cafe and recovered judgment. He has now brought suit against the party's insurer under the so-called "direct action" statute § 38a-321. Under the terms of that statute, the plaintiff here as "judgment creditor" would have a right to coverage under the cafe's policy with the defendant insurer only to the extent that the insured (the cafe) could have enforced a claim for indemnity against its insurer. CT Page 3448
In Count Three, the plaintiff alleges that the cafe failed to provide adequate supervision so as to prevent the person who assaulted the plaintiff from doing so and failed to have a bouncer in the area where the plaintiff was sitting; failed to warn the plaintiff of the danger of fights; and failed to remove the assaulter from the premises when they knew or should have known he was a danger to other patrons.
In his memorandum in opposition to the defendant insurer's motion, the plaintiff defines his claim in the third count as follows: "The plaintiff alleged in his underlying complaint that the bar failed to hire sufficient staff so as to prevent the assault from happening." The only response by way of affidavit made by the plaintiff confines itself to this definition or limitation of his claim. He says in paragraph 4 that "[i]t is my position that this position [sic — the "exclusion provision" is referred to] does not bar coverage for an allegation concerning failure to adequately staff a bar." The court will only consider this allegation then in relation to the applicability of the "exclusive provision" of the policy. If the exclusion would have barred coverage for the café, it bars coverage for the plaintiff who stands in the shoes of the cafe for the purpose of making this claim.
The exclusion clause specifically excludes claims "arising out of . . . [a]llegations that the insured's . . . omissions in connection with hiring, retention, supervision or control of employees, agents or representatives caused, contributed to, related to or accounted for the assault and battery."
The plaintiff states that the policy is ambiguous because: "When [he] asserts [the café] failed to hire enough security, the exclusion in the policy must be looked at with that in mind. The exclusion present here does not adequately state if that is covered. It is the acts of the insured in hiring that are excluded, not the quality of his (sic) hire." (Page 4 of plaintiff's brief). Apart from the fact that the last sentence appears to make a different argument from the first, as noted the plaintiff's affidavit clearly states the claim is that the cafe operators failed to "adequately staff" the bar — in other words, they failed to hire "enough" security, that is an additional person or persons.
After reading the exclusion clause, the court concludes there CT Page 3449 is no ambiguity. The plaintiff's reading would make sense only if the clause excluded coverage for claims arising out of "omissions in connection with the supervision and control of employees, etc." It does not read that way. It reads "omissions
in connection with the hiring, retention, supervision or control of employees." Webster's Ninth New Collegiate Dictionary defines "omission" as "1.a. Apathy toward or neglect of duty; b. Something neglected or left undone. 2. The act of omitting: the state of being omitted." "Omit" is defined as "1. To leave out or leave unmentioned. 2. To fail to perform or make use of." When the word "omission" is used with "hiring" or "retention" in regards to employees, it can only mean that there was a failure to hire or retain employees that could have been so hired or retained. In effect, the plaintiff's failure to read the policy language in this way makes the use of the words "hiring" and "retention" either meaningless or inexplicable.
In Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573,583 (1990), the court said:
 "If the words in the policy are plain and unambiguous, the established rules for the construction of contracts apply. The language, from which the intention of the parties is to be deduced must be accorded its natural and ordinary meaning, and courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties."
In McGlinchey v. Aetna Casualty Surety Co., 224 Conn. 133,137 (1992), the court also said:
 "There is no presumption that language in insurance contracts is inherently ambiguous. Only if the language manifests some ambiguity do we apply the rule that ambiguous insurance contracts are to be construed in favor of insureds and to provide coverage."
When a judge finds ambiguity where none exists, he or she is in effect making the insurance contract instead of the parties.
It should also be noted that in the context of a case like this where suit is brought under the "direct action" statute, we are not involved with the presumption creating scenario of the CT Page 3450 powerful insurance company writing policies for the unsophisticated member of the public. Here, the people in the plaintiff's position are proceeding under policies whose language was negotiated by insurance companies with business people who presumably know how their businesses operate and the risks presented by that operation. The meaning of the words here simply is not ambiguous from the perspective of parties in that type of relationship to each other.
Beyond that, the court finds this contract language is not ambiguous even from the perspective of the ordinary layperson.
True, the plaintiff, as noted in his affidavit, states his position is that the exclusion provision does not bar coverage for failure to adequately staff a bar. But it is the court's responsibility to interpret contract language in the first instance and as said in Downs v. National Casualty Co.,146 Conn. 490, 494, 495 (1959):
 "A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity and words do not become ambiguous because lawyers or laymen (sic) contend for different meanings." (Emphasis added).
The motion for summary judgment is granted.
Corradino, J.