[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON OPPOSITION TO APPLICATION FOR ORDER TO PROCEED WITH ARBITRATION
This, case could be seen coming. In being required to draw an ever narrower bead upon the line that divides the timely from the too late in demands for uninsured motorist arbitration, this court must weigh whether one gets into internal banking entries, to the "clearing" of a check. This to determine the point at which the six year statute of limitations has begun to tick against plaintiff from when plaintiff has accomplished "exhaustion by payment" of underlying tortfeasor's policy.
The defendant, American Employers Insurance Company, opposes plaintiff's Application for Order to Proceed with Arbitration on the ground that the preceding written demand for arbitration was not timely made and, therefore, the claim is barred by the statute of limitations.
The plaintiff agreed to settle a motor vehicle accident with an apparently underinsured tortfeasor for $20,000. The events surrounding tortfeasor's payment are critical to the current defendant's limitation defense.
The plaintiff signed a release in favor of the tortfeasor for $20,000 on April 18, 1991; the carrier for the tortfeasor issued the settlement check on April 23, 1991, and this check was received and deposited by plaintiff on April 26, 1991. Just over six years later, the plaintiff made a written demand for arbitration of underinsured motorist benefits under UIM policy by letter dated April 29, 1997.
 DISCUSSION
The core issue concerns when the applicable statute of limitations begins to run. Both parties agree that the six year statute of limitations pursuant to General Statutes § 52-576[1]
applies to this case. The parties additionally dispute whether an oral demand for arbitration was made; if it was made, it was made before six years elapsed, raising the issue whether an oral demand is sufficient under the terms of the contract. Finally, the plaintiff alleges that the defendants should be estoppel from asserting the statute of limitations.[2]
 STATUTE OF LIMITATIONS CT Page 6296
The defendant urges that the statute begins to run from the accident date, or if the court finds that misplaced, then "the cause of action accrued, at the latest, when the [plaintiff] exhausted the tortfeasor's policy." (Defendant's Memorandum, June 6, 1997, p. 6.) The defendant places exhaustion as the date the plaintiff's release was signed. The plaintiff insists, as he must, on the latest possible moment and refers to the more obviously correct landmark, "exhaustion by payment," citing General Statutes § 38a-336 (b)[3] and case law. The plaintiff's argument is that the tortfeasor's policy is "exhausted by payment" when the check actually clears the bank, which he claims must be deemed to be not until a minimum of five business days after deposit.
For reasons outlined below, this court concludes that the statute of limitations begins to run from the date the plaintiff's attorney received the check from the tortfeasor's carrier, which is also the date counsel deposited the check.
The Supreme Court has clearly stated that, "because the statute of limitations under § 52-576 is based on the accrual of a cause of action for underinsured motorist benefits, and accrual is dependent upon enforcement, the time for commencing such an action begins to run on the date of exhaustion of the tortfeasor's liability limits." Coelhov. ITT Hartford, 251 Conn. 106, 112, ___ A.2d ___ (1999).
The question therefore is when the plaintiff "exhausted" the tortfeasor's liability limits. "An insurance company shall be obligated to make payment to his insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment off judgments orsettlements. . . ." (Emphasis added.) General Statutes § 38a-336
(b). In 1995, the Supreme Court held that "[i]n Continental Ins. Co.v. Cebe-Habersky, [214 Conn. 209, 213, 571 A.2d 104
(1990)] we concluded that a single policy is exhausted only when the limit of coverage actually has been paid to the claimant." Ciarelliv. Commercial Union Ins. Cos., 234 Conn. 807, 811, 663 A.2d 377
(1995). The Supreme Court revisited the issue in 1999 and again held that § 38a-336 (b) "requires that the insured first liquidate a claim against a tortfeasor before recovering underinsured motorist compensation. . . ." (Citations omitted; internal quotation marks omitted.) Coelho v. ITT Hartford, supra, 251 Conn. 112.
When was this tortfeasor's policy, then, liquidated and/or "actually" paid? "Liquidate" is defined as, "[t]o settle (an obligation) by payment or other adjustment." Black's Law Dictionary (7th Ed. 1999). "Payment" CT Page 6297 is defined as, "[p]erformance of an obligation, usu. by the delivery of money. Performance may occur by delivery and acceptance of things other than money, but there is a payment only if money or other valuable things are given and accepted in partial or full discharge of an obligation." Id. The plaintiff cites to General Statutes § 42a-3-802 (1)(b) and argues that it was in effect in 1991.[4] This section stated that, `[u]nless otherwise agreed where an instrument is taken for an underlying obligation . . . (b) . . . the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment." General Statutes § 42a-3-802 (1)(b). "Presentment" was defined as "a demand for acceptance or payment made upon the maker, acceptor, drawee or other payor by or on behalf of the holder." General Statutes § 42a-3-504.[5] "Suspend" is defined as, "[t]o interrupt; postpone; defer. To temporarily keep (a person) from performing a function . . . or exercising a right or privilege." Black's Law Dictionary (7th Ed. 1999). According to the statute, the obligation was deferred until a demand for payment on the check was made. The plaintiff argues that the settlement with USAA was on the express understanding that the settlement would be void if the check was "not good." (Plaintiff's Memorandum, June 24, 1997.) Presumably if the check did not clear, there would have been no settlement. This, however, does not affect the suspension of the obligation upon presentment. If the check did not clear, then the plaintiff, according to the statute and the terms of the settlement, would have had a cause of action against USAA for the obligation. The check, however, did clear and the settlement was effective. Section 42a-3-802 (1)(b), therefore, does not support the plaintiff's argument that exhaustion of the tortfeasor's liability limit occurs upon the check clearing.
In Hansen v. New Haven Legal Assistance Assn, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 347500 (August 1, 1994, Hadden, J.), the court, in deciding the defendant's motion for summary judgment, had to determine if the applicable statute of limitations, § 52-576, began to run when the defendant's check, in part payment of a sum owed the plaintiff, cleared or when it was delivered to payee. The court applied General Statutes § 42a-3-310 by analogy and held that the six year statute of limitations began to run upon delivery of the check. Section42a-3-310 deals with the effect of an instrument on the obligation for which it was taken. "Unless otherwise agreed and except as provided in subsection (a), if a note or an uncertified check is taken for an obligation, the obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken, and the following rules apply: (1) In the case of an uncertified check, suspension of the obligation continues until dishonor of the check or until it is paid or certified. Payment or CT Page 6298 certification of the check results in discharge of the obligation to the extent of the amount of the check." General Statutes § 42a-3-310
(b)(1); see also Connecticut Light Power Co. v. DaSilva,231 Conn. 441, 447, 650 A.2d 551 (1994) ("Unless otherwise agreed, if a promissory note is taken for a preexisting obligation, the obligation is ordinarily suspended `until dishonor of the note or until it is paid.'")
Although § 42a-3-310 took effect in October 1991,[6]
it may also be applied by analogy to the present case. "[I]f a note or an uncertified check is taken for an obligation, the obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken. . . ." General Statutes § 42a-3-310(b). Once the check clears, the obligation, to the extent of the check, is discharged. General Statutes § 42a-3-310 (b)(2). The court in Hansen, supra, looked to 51 Am.Jur.2d, § 376[7] for guidance in determining whether the obligation was discharged upon receipt of the check or upon the check clearing. In the present case, 60 Am.Jur.2d § 18 (1987) is persuasive. This section states that "[a]lthough a check is only conditional payment of an obligation, once it has been cashed or deposited and has made the complete commercial cycle back to the drawee bank where it is finally accepted and paid, the time of payment of the obligation relates back to the time when the check was delivered to the obligee." 60 Am.Jur.2d § 18 (1987).[8]
According to § 42a-3-802, a tortfeasor's obligation was suspended when the check was taken; according to § 42a-3-310, the obligation was suspended until the check cleared; and pursuant to 51 Am.Jur.2d § 18, once the check cleared, the time of payment related back to the time the check was delivered to the plaintiff. These sections do not support the plaintiff's argument that the date the check clears is the controlling date for purposes of the statute of limitations.[9] If the check did not clear, then, according to the terms of the settlement and the statutes, the plaintiff would have had a cause of action against USAA for the obligation. The check, however, did clear and the settlement was therefore effective.
The plaintiff employs another argument based in federal banking regulation and concomitant state statute. The plaintiff cites to "12 U.S.C. § 4001 et seq., Regulation CC (12 C.F.R.) and § 36-9v" for his argument that there is a minimum
of five business days for a check or draft from Texas to clear. The plaintiff does not specify to which precise subsections in the United States Code and in the Code of Federal Regulations he refers. Section 4001, 12 U.S.C. et seq., addresses expedited funds availability,[10]
CT Page 6299 and Regulation CC addresses Availability of Funds and Collection of Checks. In actuality however, both impose a maximum period of time between when the funds are deposited and when they must be available to the depositor for withdrawal. Section 4002(b)(2), 12 U.S.C. which addresses the permanent schedule for the availability of funds deposited by nonlocal checks,[11] imposes a maximum of four business days; 12 U.S.C. § 4002 (c)(2), which addresses the temporary schedule for the availability of funds of nonlocal checks, imposes a maximum of six business days; and 12 C.F.R. § 229.12
(c)(1)(i), which addresses the availability schedule for nonlocal checks, imposes a maximum of five business days.[12] General Statutes § 36-9v prohibited a bank from imposing "a time limitation on the right of a customer to draw on items . . . received for deposit in the customer's account which exceeds . . . five business days for items drawn on a depository institution not located in this state unless such bank . . . has reason to believe that such check will not clear." General Statutes (Rev. to 1991) § 36-9v.[13]
The laws the plaintiff refers to enunciate the latest possible tolerable date by which a bank must make deposited funds available for withdrawal. The laws do not require a minimum of five business days for a check to clear as the plaintiff puts it, but rather impose amaximum number of days between the deposit of funds and when the depository bank must honor the depositor's desire for the funds. This is not to say that the plaintiff here is to be given five days beyond deposit to be deemed in true receipt of the money, or that the plaintiff gets five days before he need concede that "exhaustion by payment" occurred. The law does not support the plaintiff's argument that the date the check clears is the appropriate date for statute of limitation purposes. The statute of limitations begins to run from date the plaintiff's attorney received the check from the tortfeasor's carrier, which is also the date counsel deposited the check. This date is April 26, 1991.
 ORAL DEMAND
The plaintiff's secondary claim is that a written demand for arbitration is not necessary and that an oral demand was made much earlier, on March 14, 1997. The plaintiff argues that the language in the insurance policy is permissive and did not establish an exclusive method, that of a writing, to constitute an effective and timely demand. As noted more specifically in this decision's conclusion, this aspect of plaintiff's argument is not well taken demand for arbitration occurring more than six years from the receipt of tortfeasor's claim. CT Page 6300
"It is the function of the court to construe the provisions of the contract of insurance . . . The [i]nterpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy. . . . The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy. . . . The policy words must be accorded their natural and ordinary meaning . . . [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy. . . . A necessary predicate to this rule of construction, however, is a determination that the terms of the insurance policy are indeed ambiguous. . . . The fact that the parties advocate different meanings of the [insurance policy] does not necessitate a conclusion that the language is ambiguous. . . ." (Citations omitted; internal quotation marks omitted.) Springdale Donuts, Inc. v. Aetna Casualty Surety Co. of Illinois, 247 Conn. 801, 805-6,724 A.2d 1117 (1999). The court also held that it would "not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings." (Internal quotation marks omitted.) Id., 809. "Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) HLO Land Ownership Associates Ltd. Partnershipv. Hartford, 248 Conn. 350, 357, 727 A.2d 1260
(1999).
In the present case, the insurance policy states that "[i]f we and an insured do not agree . . . either party may make a written demand for arbitration." (Plaintiff's Exhibit 1.) The plaintiff argues that the word "may" is permissive and not mandatory. The Supreme Court, inMcGlinchey v. Aetna Casualty Surety Co., 224 Conn. 133,617 A.2d 445 (1992), addressed whether the use of the word "may" constituted an option for demand to be oral or written. In that case, the plaintiff argued that the clause,
 "the covered person may make a written demand for arbitration within 2 years of the date of [the] accident," was ambiguous in that it stated that a written demand for arbitration may be made within two years of the accident without stating the consequences of a late demand. If so, of course, CT Page 6301 resolution of the ambiguity would have to favor the insured, as he did not author the policy. Id. 137. The court was not persuaded by this argument, holding that, "[t]he argument advanced by the insured is unpersuasive for a number of reasons. In context, the use of the word `may' is not ambiguous because it merely memorializes the fact that arbitration is an option that an insured is free to elect or to reject. This construction of `may' is consistent with its dictionary definition of granting permission, freedom or ability. . . . The insured has an option to demand arbitration only upon compliance with the explicit and unambiguous constraints of the terms of the option, including the obligation to initiate the arbitration demand within the stated time period. It is fanciful to suggest that the consequence of failure to observe the time constraint is anything other than a lapse of the right conferred by the option. Finally, it is the fact that arbitration is an option for the insured that, without creating ambiguity, obviates any need for an explicit clause denying the right to demand arbitration after two years from the date of the accident."
(Citations omitted.) Id., 138.
In the present case, the plaintiff had the "option to demand arbitration only upon compliance with the explicit and unambiguous constraints of the terms of the option, including obligation to initiate the arbitration demand" in the manner required by the contract. Id. The term "may" makes arbitration itself an option for the plaintiff; it does not make the method by which to request arbitration optional.[14]
Assuming arguendo that an oral demand is permitted, the plaintiff's evidence that he made an oral demand for arbitration is not very persuasive. The plaintiff refers to Plaintiff's Exhibit 1, p. 39,[15]
as evidence that he made an oral demand for arbitration on March 14, 1997. This exhibit is an Intra-Office Memorandum documenting a telephone conference with the plaintiff's attorney, attorney Catalano, and the defendant's representative. The relevant portion states, "Atty. Catalano concluded the conversation with her [the defendant's representative] by clarifying her offer . . . Atty. Catalano would have to relay the offer to his client but Atty. Catalano was not inclined to recommend it andAtty. Catalano thought that Atty. Catalano would be seeking arbitrationof the claim." (Emphasis added.) (Plaintiff's Exhibit 1, p. 39.) Assuming arguendo that an oral demand for arbitration is sufficient under the CT Page 6302 terms of the insurance policy, the evidence indicates only that the attorney thinks he would be seeking arbitration.
 ESTOPPEL
The plaintiff also argues that the defendant waived the limitation period by its actions and should be estopped from denying the plaintiff's claims. The plaintiff argues that the defendant's representative "promised plaintiff's counsel that she would re-evaluate her file with a view toward increasing the settlement offer" and "promised him that she would call him" by a certain date. (Plaintiff's Supplemental Memorandum of Law, dated July 2, 1999, p. 16.) The plaintiff argues that, because the defendant's representative failed to keep this promise by not contacting him by the date promised and because the defendant "was actively pursuing the implementation of a statute of limitations defense," the defendant was acting in bad faith and should be estopped from benefitting [benefiting] from its actions. (Plaintiff's Supplemental Memorandum of Law, p. 18.)
The defendant claims it did not waive the statute of limitations, and asserts that plaintiff is claiming implied waiver or estoppel but fails to satisfy the required elements. (Defendant's Supplemental Memorandum of Law, dated September 30, 1999.) The defendant argues that it did not act in such a way as to induce the plaintiff's reliance and that the plaintiff did not change his position in reliance, thereby incurring injury. (Defendant's Supplemental Memorandum of Law, dated September 1999.) The defendant further argues that it was the responsibility of the plaintiff's attorney to be aware of the statute of limitations period. (Defendant's Supplemental Memorandum of Law, dated September 30, 1999.)
"Estoppel has its roots in equity and stems from the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed . . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse. . . ." (Citations omitted; internal quotation marks omitted.) Boyce v.Allstate Ins. Co., 236 Conn. 375, 383-84, 673 A.2d 77 (1996). There are three essential elements of estoppel: "(1) the party against whom estoppel is asserted must induce a belief in another person that certain facts exist; (2) the other party must change its position in reliance on that belief; and (3) that party must suffer some injury as a result of such reliance." Mellon v. Century Cable Management Corp., 247 Conn. 790,795, 725 A.2d 943 (1999). "In addition, it is well settled that a party who has not engaged in `misleading conduct' cannot be estopped. See, e.g.,Boyce v. Allstate Ins. Co., supra, 383-84; Novella v. HartfordCT Page 6303Accident Indemnity Co., 163 Conn. 552, 564, 316 A.2d 394 (1972) (`[t]here must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as amounts to constructive fraud' [internal quotation marks omitted]); Spear-Newman, Inc. v. Modern Floors Corp., 149 Conn. 88, 91,175 A.2d 565 (1961) ("[e]stoppel rests on the misleading conduct of one party to the prejudice of the other')." Id., 795-96. "Moreover, it is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge." (Citations omitted; internal quotation marks omitted.) Boyce v. Allstate Ins. Co., supra, 236 Conn. 385-36.
"It is significant in the first place that the principle of equitable estoppel is ordinarily `invoked in cases where the defendant misrepresented the length of the limitations period or in some way lulled the plaintiff into believing that it was not necessary for him to commence litigation.' Cerbone v. International Ladies' Garment Workers'Union, 768 F.2d 45, 50 (2d Cir. 1985); see Baldwin County Welcome Centerv. Brown, 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). The cases in which the Connecticut Supreme Court has affirmatively applied this principle have involved precisely this situation." Gallop v.Commercial Painting Co., 42 Conn. Sup. 187, 195, 612 A.2d 826 (1992). "`An insurance company who misleads a claimant about the statute of limitations may be estopped from asserting the statute of limitations.'Carroll v. Safeco Insurance, [Superior Court, judicial district of Waterbury at Waterbury, Docket No. 117750 (Apr. 5, 1994, Sullivan, J.) (11 Conn.L.Rptr. 271)]; Krupa v. Kelley, 5 Conn. Cir. 127, 245 A.2d 886 (App.Div. 1968). `Equitable estoppel is in cases [concerning the statute of limitations] where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay bringing his lawsuit. This doctrine is applicable where the defendant has either misrepresented the length of the limitations period or lulled the plaintiff into believing that it was not necessary for him to commence litigation.'" Kolodziej v. Barron, Superior Court, judicial district at New Britain, Docket No. 485582 (October 28, 1998, Leheny, J.) (23 Conn.L.Rptr. 581). "The insurance company must be guilty of some affirmative act of concealment — of more than mere silence. . . . An insurance company is not estopped to rely on the Statute of Limitations where the plaintiffs were delayed in commencing suit, not by misrepresentations of the defendants, but by negotiations." (Citations omitted; internal quotation marks omitted.) Carroll v. Safeco Insurance, supra, Superior Court, Docket No. 117750 "`It is . . . well established that mere negotiations towards an amicable settlement afford no basis for an estoppel, nor do mistakes, misunderstandings or lack of knowledge in themselves toll, the running of the statute.' . . . Krupa v. Kelley, CT Page 6304 supra, 5 Conn. Cir. 132; Carroll v. Safeco Insurance, supra, Superior Court, Docket No. 117750, 11 Conn.L.Rptr. 271; Consoli v. Clarke
[Superior Court, judicial district at Hartford-New Britain, Docket No. 556499 (December 19, 1996, Wagner, JTR) (18 Conn.L.Rptr. 363)."Kolodziej v. Barron, supra, Superior Court, Docket No. 485582. In the present case, "[t]he plaintiff has neither alleged nor shown any facts that the defendant misrepresented or mislead her about the statute of limitations." Carroll v. Safeco Insurance, supra, Superior Court, Docket No. 117750. Nor is there any evidence that the plaintiff "change[d] its position in reliance on that belief . . . ." Mellon v. Century CableManagement Corp., supra, 247 Conn. 795. As the person claiming estoppel, the plaintiff bears the burden "to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge." Boyce v. Allstate Insurance, supra, 236 Conn. 385-86.
In the present case, the plaintiff states that he "had no knowledge of the true state of things, i.e. that Ungaro [the defendant's representative] was actively pursuing the implementation of a statute of limitations defense nor did he have any convenient means of acquiring that knowledge." (Plaintiff's Supplemental Memorandum of Law, dated July 2, 1999, p. 18.) "[S]ilence will not operate as [an] estoppel absent a duty to speak." (Internal quotation marks omitted.) Boyce v. AllstateIns. Co., supra, 236 Conn. 387. "[D]ue diligence at least required that the plaintiff make an inquiry of the "defendant before assuming that the defendant did not intend to enforce the terms of its policy." Id. "The defendant was under no duty to . . . inform him further of its intentions to rely on the limitation provision as a defense to coverage." Id., 387, citing Hanover Ins. Co. v. Fireman's Fund Ins. Co.,217 Conn. 340, 350, 586 A.2d 567 (1991) (no duty on behalf of insurance company to inform other party of its intention to rely on one year statute of limitation clause in policy). The plaintiff was aware of all the relevant dates in this case. The plaintiff was also aware, or should have been aware, of the six year statute of limitations.
In sum, one must conclude that plaintiff has not met all of the criteria necessary to establish estoppel. It may be true that some of the case language sounds favorable to plaintiff's argument's construct, but the longest shortfall is in regard to illustrating that the carrier's representative intended to deceive.
 CONCLUSION
The statute of limitations began to run from the date the plaintiff's attorney received the check from the tortfeasor's carrier, which is also the date counsel deposited the check. This date is April 26, 1991. An CT Page 6305 oral demand for arbitration is insufficient under the terms of the insurance policy. The plaintiff has not proven the elements essential to claim implied waiver or estoppel. Six years from April 26, 1991, is April 26, 1997, which was a Saturday. "[I]f the last day for performance of certain acts falls on a Sunday or a legal holiday, the doing of that act on the following day would be timely." Small v. South NorwalkSavings Bank, 205 Conn. 751, 758, 535 A.2d 1292 (1988). This rule also applies if the last day for performance is a Saturday. The demand for arbitration, therefore, was required to be made no later than Monday, April 28, 1997. The demand, however, was made Tuesday, April 29, 1997. The plaintiff's application for order to proceed with arbitration must therefore be denied.
The Court
By __________________________ Nadeau, J.